[Civ. No. 12262.   Third Dist.   June 9, 1969.]

JAMES MAURICE VAILLANCOURT, Petitioner, v. THE SUPERIOR COURT OF PLACER COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Manzella & Flenniken and William Flenniken, Jr., for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Nelson Kempsky, Deputy Attorneys General, for Real Party in Interest.

REGAN, J.—Petitioner was charged by complaint filed in the Justice Court of the Auburn Judicial District, County of Placer, with a violation of section 11530 of the Health and Safety Code (possession of marijuana). After a preliminary examination, he was held to answer in the superior court. After a plea of not guilty, he moved to suppress the physical evidence which had been introduced against him pursuant to section 1538.5 of the Penal Code. The motion to suppress was denied. Thereafter, petitioner filed a petition for writ of prohibition and this court issued an order to show cause.

Petitioner contends:

1. The entry into petitioner's room, in the absence of facts upon which the entering officers could maintain a reasonable good faith belief that someone was inside the room, was improper.

2. Entering officers did not comply with Penal Code section 844 prior to breaking into defendant's room.

Deputy Sheriffs Caldwell and Edwards were at the Olympic Village Hotel in Squaw Valley at about 9:35 p.m. on December 17, 1968. The two were off duty and working part

time as security officers. Edwards told Caldwell that in Chalet Number Four he had smelled what he thought to be burning marijuana. Chalet Number Four is part of the Olympic Village Hotel and constitutes a three-story, dorm-type building.

At the entrance to the hallway on the lower level, Caldwell and Edwards both smelled what they believed to be the odor of burning marijuana. As they started down the hall toward the source of the odor, a male and a female came out of room 426. Because of their appearance and dress, the officers stopped them and requested identification. After the officers received this information, the couple was permitted to continue on its way. The male was the petitioner, James Vaillancourt.

The two officers then proceeded down the hall, sniffing at each door fronting the hallway. They determined that the odor was probably coming from room 426. Caldwell was familiar with the odor of marijuana, having smelled it on some 25 to 30 prior occasions.

The officers heard no sounds coming from room 426. Caldwell knocked on the door, and called out, ''Sheriff's office, open the door.'' When no response came, he knocked again (and perhaps a third time) each time calling out, ''Sheriff's office, open the door.'' Caldwell was of the opinion that there was someone in the room. He thereupon took out his passkey and opened the door.

Officer Caldwell testified that he had been in similar situations in the past involving marijuana burning in the rooms where he had similarly unsuccessfully demanded entrance. He had also experiences in which one person rented a room and others sought to occupy it without authorization or payment.

After entering, the officers checked the room visibly to see if anyone was there; they found no one. On the way back to the door, Caldwell looked into an open trash can and saw two short, partially smoked marijuana cigarettes, and a rolled piece of cardboard match cover, commonly known as a ''crutch'' used for smoking marijuana cigarettes. He took these items into his possession and returned to the bar of the hotel where he asked petitioner to step into the office of the hotel. There, Caldwell advised the petitioner and his companion of their *Miranda* rights. Caldwell then asked petitioner if he was the occupant of room 426, and petitioner replied that he was the sole occupant and renter of the room.

Petitioner was placed under arrest and a search was made

of his person; the search revealed a hand-rolled marijuana cigarette.

A state chemical analyst confirmed the fact that the cigarettes seized contained marijuana.

### 1. *Entry Into Room; Belief It Was Inhabited.*

Petitioner states: "The basic question presented . . . is whether a peace officer may break into a room through a closed door when he believes that there may have been someone smoking marijuana in that room, even though the facts known to him at the time of entry indicate that there is no one in the room; or, must he first obtain a warrant."

Petitioner points to *Johnson* v. *United States* (1948) 333 U.S. 10 [92 L.Ed. 436, 68 S.Ct. 367], wherein it was held that the detection of the smell of burning opium emanating from a room did not authorize entry without a warrant, and that the subsequent search of the room was not justifiable as an incident to a legal arrest.

Petitioner contends the "federal rule" of *Johnson* was adopted by our Supreme Court by a 4 to 3 decision in *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665], decided in 1968. In *Marshall,* the police, who had neither an arrest or search warrant, decided to arrest defendant on the basis of an informant's report. Because the front door to the apartment was a large sliding glass door, they ruled out forcible entry as dangerous to person and property. When they could not obtain a key from the manager, they called the police department for an officer to pick the lock. The officers knocked on the door several times, announced their identity, and demanded entry. There being no response, they picked the lock and entered the apartment. They found no one in the apartment after a cursory search of the living room, bedroom and bathroom. An open window with its screen removed indicated that the occupants had fled. One officer then detected a sweet odor similar to that of the marijuana defendant had given to the informant. In other narcotics investigations the officer had smelled similar odors from marijuana that had been soaked in wine. The odor came from an open cardboard box on the floor inside an open bedroom closet. In the box the officers found a closed brown paper bag, which, when opened, was found to contain 21 plastic bags of wine-soaked, sweet-smelling marijuana. On these facts the court held, inter alia, that however strongly convinced police officers may be that a search will reveal contraband, their belief,

whether based on a sense of smell or other sources, does not justify a search without a warrant, the court stating:

"This contention [of the Attorney General that the contraband was in plain view] overlooks the difference between probable cause to believe contraband will be found, which justifies the issuance of a search warrant, and observation of contraband in plain sight, which justifies seizure without a warrant. However strongly convinced officers may be that a search will reveal contraband, their belief, whether based on the sense of smell or other sources, does not justify a search without a warrant. ' ''The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.[1] Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.'' ' [Citations.]'' (People v. Marshall, supra, 69 Cal. 2d at p. 57.)

And on page 59, the court states: ''Of course officers may rely on their sense of smell to confirm their observation of already visible contraband. [Citations.] To hold, however, that an odor, either alone or with other evidence of invisible contents can be deemed the same as or corollary to plain view, would open the door to snooping and rummaging through

---

[1]Footnote 2 from 69 Cal.2d at p. 57: ''It is this point that is also not grasped by the dissenting opinion herein. That opinion completely ignores the rule that in the absence of some 'grave emergency' (McDonald v. United States (1948) 335 U.S. 451, 455 [93 L.Ed. 153, 158, 69 S.Ct. 191] a search of a dwelling cannot be conducted without a warrant except as incident to a lawful arrest therein. (Chapman v. United States (1961) 365 U.S. 610, 613 [5 L.Ed.2d 828, 831, 81 S.Ct. 776].) Of course there is no dispute with the many cases cited in the dissenting opinion that an officer may rely upon all of his senses in determining whether there is probable cause to believe that a crime has been committed or that contraband may be present. Probable cause alone, however, cannot justify a search without a warrant. ' ''Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are . . . unlawful notwithstanding facts unquestionably showing probable cause.'' ' (Chapman v. United States, supra, quoting Agnello v. United States (1925) 269 U.S. 20, 33 [70 L.Ed. 145, 149, 46 S.Ct. 4, 51 A.L.R. 409].)''

personal effects. Even a most acute sense of smell might mislead officers into fruitless invasions of privacy where no contraband is found.

"Moreover, however keen their sense of smell, officers cannot seize the thing they smell until they find it after looking for and through the places from which the odor emanates. In short, they must still conduct a search. They may not do so without a warrant any more than without a warrant they may set loose a dog of unerring talent to sniff out contraband they reasonably believe will be found merely because they have lawfully entered the premises for another purpose. 'In plain smell,' therefore, is plainly not the equivalent of 'in plain view.' "

The critical issue in the instant case would appear to be whether or not the officers had the right to be in the position to have plain view of the marijuana. (*People* v. *Marshall, supra,* 69 Cal.2d at p. 57.) In other words, did the officers have probable cause to enter and arrest for a crime being committed in their presence and, as a corollary, did they have reason to believe the apartment was occupied? Finally, was section 844 of the Penal Code substantially complied with so that the officers did effect a proper entry.

The Attorney General admits that the fact that the officer's sense of smell informed them that marijuana was present did not alone authorize an entry into a locked room in view of *Marshall.* However, he contends the fact that the marijuana was burning implied a reasonable probability that a person was at that time engaged in the burning of marijuana, and thus that a crime was being committed in the officers' presence. Therefore, he argues, it must be concluded that the officers had probable cause to arrest any occupants of the room for either possession of marijuana or for being in a place where marijuana was being smoked.

The Attorney General relies on *People* v. *Bock Leung Chew* (1956) 142 Cal.App.2d 400 [298 P.2d 118], cited by the dissent in *Marshall, supra,* and not specifically overruled by the majority. In *Bock Leung Chew* the court held that when officers detect the odor of a substance, such as opium, the possession of which is made a felony, apparently coming from an apartment, this justifies their making an immediate entrance into and search of the apartment without first procuring a warrant. The court also held that an offense is committed in the presence of an officer when the officer receives knowledge of the commission of such offense through any of

his senses, including the sense of smell. In so holding, the court declined to follow the federal rule enunciated in *Johnson, supra,* relying upon *People* v. *Cahan* (1955) 44 Cal.2d 434, 450-451 [282 P.2d 905, 50 A.L.R.2d 513].

It is not entirely clear whether the holding in *Bock Leung Chew* has been disapproved by *Marshall.* However, we do not believe that *Marshall* goes that far, especially under the circumstances of this case. Here, the officers detected the smell of burning marijuana which would clearly indicate that a crime was being committed in their presence. The burning would also indicate that the evidence was in fact disappearing, unlike the situation in *Marshall* where there was no imminent destruction of the contraband. (Cf. *People* v. *Gaines* (1968) 265 Cal.App.2d 642, 647 [71 Cal.Rptr. 468].) We therefore conclude that the officers did have probable cause to effect an arrest. (See, *People* v. *Gann* (1968) 267 Cal.App. 2d 811, 812 [73 Cal.Rptr. 502]; *People* v. *Barcenas* (1967) 251 Cal.App.2d 405 [59 Cal.Rptr. 419].)

As to the occupancy of the room, the test of whether the officers may enter a dwelling to make an arrest is dependent upon the reasonableness of their belief in occupancy. (*People* v. *Marshall, supra,* 69 Cal.2d at p. 56.)

Although the officers had seen two persons emerge from room 426, this fact did not necessarily indicate that the room was empty. The presence of the odor of burning marijuana by itself indicates that it was being possessed or consumed by an individual or individuals at that precise time. Furthermore, the officers testified that they believed the room to be occupied, and based this conclusion on their past experience in other marijuana smoking cases and also their experience with individuals renting rooms and then permitting others to use them. Thus, it would appear that under the circumstances the belief of the officers was reasonable.

### 2. *Compliance with Penal Code section 844.*

Petitioner also contends, however, that the entering officers did not comply with Penal Code section 844 prior to breaking into defendant's room. This section provides in part: "To make an arrest . . . a peace-officer, may break open a door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Here, the officers knocked and called out (at least two and

possibly three times), "Sheriff's office, open the door." In *Marshall, supra,* 69 Cal.2d at page 55, the court stated: "By persistently knocking, demanding entry, and identifying themselves for several minutes before picking the lock and entering, the officers substantially complied with the notice requirements, of the statute."

The court in *Marshall* (at p. 56) cites *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], as support for this proposition. In *Rosales,* at page 302, the court stated: "That section requires that an officer explain his purpose before demanding admittance, not merely that he identify himself as an officer." In *Rosales,* however, the officers did not announce their purpose *or* demand entry, so the above statement is not a holding that lack of statement of purpose alone invalidates an entry. (Cf. *People* v. *Olivas* (1968) 266 Cal.App.2d 380 [72 Cal.Rptr. 109].) Further, in *Rosales* the arrest was not for apparent criminal activity occurring at the moment. This situation is therefore different, resembling more that in *People* v. *Cockrell* (1965) 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116], where the court states: "Although it does not appear that the officers 'explained the purpose for which admittance' was 'desired' they substantially complied with section 844 by knocking, requesting admittance, and identifying themselves as sheriff's officers. [Citations.] Since it appeared that a sale of marijuana had been made in the Cockrells' home only minutes before the officers requested admittance, 'the purpose for which admittance' was 'desired' was reasonably apparent."

We conclude that since there was reasonable cause for arrest, the officers reasonably believed the room to be occupied, and the actions of the officers were in substantial compliance with the dictates of section 844, the entry of the officers into the room was proper.

We note that the entry in *Marshall* was also deemed to be lawful. The last question therefore is whether the marijuana was properly seiezd. There are several distinguishing features in this case from *Marshall*. In *Marshall,* the sense of smell was utilized only after entry into the apartment, and the contraband was not in plain sight. Here, the sense of smell was utilized to ascertain that a crime was in fact being committed. Although in both cases, the searched-for occupants had apparently ended, here the contraband was discovered in plain sight. In *Marshall,* the court states (at p. 56) : "During a lawful search of premises for persons believed to be in hid-

ing, police officers may seize contraband evidence 'in plain sight.' [Citations.] Under such circumstances there is, in fact, no search for evidence. [Citations.]

The contraband was in plain sight when seen by an officer who was legally in a position to view it; it was subject to seizure by the officer without violation of the rights of the. owner.

The stay order is vacated, the order to show cause is discharged, and the petition for writ of prohibition is denied..

Friedman, Acting P. J., and Bray, J.,* concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 20, 1969. Peters, J., was of the opinion that the petition should be granted.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.