[Crim. No. 19906. Second Dist., Div. One. Nov. 3, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
FREDDIE JAMES LEE et al., Defendants and Respondents.

**COUNSEL**

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, Jr., District Attorney, Harry Wood and Sueanne C. Lewis, Deputy District Attorneys, for Plaintiff and Appellant.

Peter Kent and Roland W. Hall, Sr., for Defendants and Respondents.

## OPINION

**LILLIE, J.**—By information Lee and Narcisse were charged in one count with possession of marijuana (§ 11530, Health & Saf. Code), and in count II Lee alone was charged with possession for sale of amphetamine (§ 11911, Health & Saf. Code). The People appeal from order granting motion to set aside information (§ 995, Pen. Code).

On November 3, 1970, Officer Nettles received information by way of an October 26 complaint to the police department that narcotics were being "dealt" at 2198 West 29th Street by "Sonny" and that the informer would meet him (the officer) at a certain location and point out "Sonny" to him. Thus, on that day he met the informer who personally related the foregoing and said that the person at that address kept his marijuana in a garbage can at the rear of the building and that he had seen marijuana in the trash can and knew what marijuana was. They went to the location where they saw "Sonny" come to the front door; "Sonny" was pointed out to the officer by the informer; in the courtroom the officer identified "Sonny" as defendant Lee. For about an hour Nettles waited in his vehicle a half block away where he could see the front door; during that time he observed numerous pedestrians walk to the front door and 10 vehicles stop in front and persons therefrom go to the door and knock, and defendant Lee appear at the door and admit them; he saw them enter, stay a very short time, then leave the premises.

The next day (November 4) Nettles again went to the address and noticed similar activity. After observing defendant Hampton arrive in a white Valiant, enter the premises and leave, Nettles advised his partner (Sergeant Carlson) by radio to stop the Valiant for investigation and narcotics violation; he then got out of the police car and went up to the address; while walking along the driveway he looked through the kitchen window; the shade was pulled almost to the bottom with an opening of three to four inches; through this opening he observed defendant Lee standing by the kitchen counter with amphetamine tablets on the counter top right beside him wrapping them in foil.[1] The residence was a duplex with two apartments in front, one on either side; the driveway led to a garage to the rear of the building.[2] Officer Nettles returned to the police car where he was

---

[1] It was stipulated that Officer Nettles was an expert in narcotics, narcotic paraphernalia and the manner of packaging for sale.

[2] At this point, at the preliminary hearing, defendants made an objection of invasion of privacy which was overruled; the magistrate found this to be a common driveway which occupants of both sides of the duplex had the right to use to go to

advised by Sergeant Carlson that defendant Hampton had been arrested for possession of marijuana; he then advised his partners they were going to the premises to arrest the occupant because of what he had observed through the window.

Followed by Sergeants Carlson and Johnson, Officer Nettles went to the front door and knocked; the door was opened and he stated, "Police officers"; "[a]t this time, a very strong odor of burning marijuana was coming from that room"; the room was very dark but he observed four persons inside; the kitchen was light and he saw defendant Lee still standing by the counter in the same position doing the same things he had observed through the kitchen window; upon seeing this through the open front door, "[he] rushed back in the kitchen where he was and placed him under arrest"; as he walked through the front door he showed his badge and I.D. card and said, "Everybody is under arrest" and rushed through to the kitchen "because if I didn't get back to the kitchen, where Mr. Lee was, he would possibly destroy the evidence"; he believed this because "[t]he evidence was right there and it has been my experience that if the occupant sees the police on the scene, the evidence is normally destroyed, if possible." As he entered the kitchen he told Lee he was under arrest. The items in plain sight on the table consisted of 27 foil bindles of five amphetamine tablets each, a bag of 300 tablets, a vial of 50 tablets and bags of marijuana—3.3, 7.5, 3.9 grams. He then arrested the others for possession of marijuana, among them defendant Narcisse; a bag of marijuana was removed from Narcisse's pocket.

At the conclusion of the hearing on the motion to set aside the information the trial court concluded, "I think that the police officers did not comply with 844; that they probably had the obligation to say, 'Police officers, we realize there is narcotic activity going on in here and open the door.' "

■ An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) ■ "Neither the trial court in a section 995 proceeding (*People* v. *Landry* (1964) 230 Cal.App.2d 775, 779 [41 Cal.Rptr. 202]; *Hacker* v. *Superior Court* (1968) 268 Cal. App.2d 387, 392-393 [73 Cal.Rptr. 907]) nor a reviewing court on appeal therefrom (*Rideout* v. *Superior Court, supra,* 67 Cal.2d at p. 474; *People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612-613 [71 Cal.Rptr. 604]) may sub-

---

the garages in the rear, and that anyone using the driveway could see in the window; and concluded that it "is not an invasion of privacy. It is not a privacy that the defendant could reasonably expect."

stitute its judgment as to the weight of the evidence for that of the committing magistrate. ■ 'Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.' (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].) Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*Rideout* v. *Superor Court, supra,* 67 Cal.2d 474.)" (*People* v. *Hall,* 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].)

■ The issue on the motion, hence before this court, is whether the officers properly entered the premises after the door was voluntarily opened by one of the occupants.[3] The evidence fails to support appellant's argument that the officers entered with the consent of the occupants, but there is merit to its other contentions.

In order to make an arrest a police officer may break open the door of a house in which is the person to be arrested after (1) identifying himself as an officer; (2) explaining the purpose for which he wished to enter; and (3) demanding entry. (§ 844, Pen. Code.)[4] Having immediately before knocking on the door, and again after the door was opened, seen defendant Lee in the process of packaging amphetamine tablets for sale, Officer Nettles had probable cause to arrest him before he ever entered the premises; also, at the time the door was opened and he stood at the threshold he smelled the odor of burning marijuana coming from the front room. Thus, before entering the premises the officer had reasonable cause to believe that Lee was engaged in the commission of a felony and that the four occupants in the front room were in a place where marijuana was being used. When the door opened Officer Nettles identified himself as a police officer and immediately displayed his badge and I.D. satisfying the initial requirement. ■ Identification without announcement of purpose can constitute substantial compliance with section 844, Penal Code "if the surrounding circumstances made the officers' purpose clear to the occupants." (*People* v.

---

[3]There is a breaking in within the meaning of section 844, Penal Code, even though the door is wide open. (*People* v. *Bradley,* 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) Under the circumstances before us we can only assume that had one of the defendants not opened the door in response to the knock, the officers would have forced entry.

[4]Section 844, Penal Code, provides: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which [the officer has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

*Rosales,* 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489]; *Greven* v. *Superior Court,* 71 Cal.2d 287, 292-293 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Sotelo,* 18 Cal.App.3d 9, 18 [95 Cal.Rptr. 486]; *People* v. *James,* 17 Cal.App.3d 463, 467 [95 Cal.Rptr. 121]; *People* v. *Peterson,* 9 Cal. App.3d 627, 632 [88 Cal.Rptr. 597]; *People* v. *Garnett,* 6 Cal.App.3d 280, 290 [85 Cal.Rptr. 769]; *People* v. *Superior Court,* 276 Cal.App.2d 581, 588 [81 Cal.Rptr. 42].) "We encounter no difficulty in concluding that the trial court could reasonably have determined that the 'purpose' of the known police officers, in entering a building openly pervaded with narcotics, was obvious to its occupants." (*People* v. *Garnett,* 6 Cal.App. 3d 280, 290 [85 Cal.Rptr. 769].) ▇▇▇ Here we conclude that the magistrate could have reasonably determined, in light of what an experienced narcotic officer believed to be extensive narcotic traffic in and out of defendant's premises during the day and the day before, the arrest of defendant Hampton for possession of marijuana immediately upon leaving the address, the observation through the window by Officer Nettles from the driveway of defendant Lee in the process of packaging amphetamine tablets for sale in the kitchen just minutes before entry, the odor of burning marijuana emanating from the room when the door was opened and defendant Lee's continued activity in the kitchen packaging contraband observed by the officer while standing outside the premises at the open door, that it was highly improbable that the occupants upon seeing the police officer and knowing his identity did not know and understand the purpose for which he sought to enter. Apposite is a statement in *People* v. *Hall,* 3 Cal.3d 992, at pages 997-998 [92 Cal.Rptr. 304, 479 P.2d 664]: "The arresting officer substantially complied with section 844 of the Penal Code under the particular circumstances shown. He gave notice of his demand for entrance through knocking and he identified himself as a police officer. (See *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 293 [78 Cal.Rptr. 504, 455 P.2d 432].) He did not expressly announce that his purpose was to make an arrest. '[I]dentification alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile.' (*People* v. *Rosales, supra,* 68 Cal.2d at p. 302.) ▇▇▇ Where a criminal offense has just taken place within a room, the occupants may reasonably be expected to know the purpose of the police visit and an express statement of purpose may not be necessary. (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Martin* (1955) 45 Cal.2d 755, 762-763 [290 P.2d 855]; *People* v. *Superior Court* (1969) 274 Cal.App.2d 578, 581 [79 Cal.Rptr. 55]; see also *People* v. *Nash* (1968) 261 Cal.App.2d 216, 226 [67 Cal. Rptr. 621].)"

While our conclusion that there was substantial compliance with section 844 is dispositive of the issue here, actually the magistrate held that the requirement of full explanation of purpose was excused because there was a reasonable likelihood that the evidence would have been destroyed had not the officer entered the premises.[5] The evidence supports this holding. Officer Nettles testified he rushed into the kitchen and placed Lee under arrest because the evidence was "right there" and, based upon his own experience, he was afraid that if Lee saw the police he would probably destroy the evidence, if possible. "Noncompliance with section 844 may . . . be excused when the officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. Such a belief, however, must be based on the facts of the particular case. It cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape or destroy evidence. (*People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706] and cases cited.)" (*People* v. *Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P. 2d 489].) Officer Nettles' belief was not based on a general assumption that a certain class of persons—those who deal in narcotics—is more likely to destroy evidence than others; it was based entirely upon his own observation of defendant Lee packaging amphetamine tablets both immediately before and while he stood at the open door, and his own experience under such circumstances.

But on still another ground the magistrate was correct in his determination. Inasmuch as at the time the door opened the officer perceived de-

---

[5]"As to 844, I think it presents an interesting question. Officer Nettles said, in essence, that it was his experience that people destroyed narcotics, dealers or users or possessors would destroy narcotics when people knocked on the door or they thought the police were near.

"I believe it is People versus Gastillo [*sic*] that expresses a disapproved dumping of narcotics users, dealers and possessors in one group, and saying that everybody who sells or uses or possesses narcotics are prone to destroy upon the ringing of the doorbell or the advent of the police. If it were based on that, I would agree with you.

"Officer Nettles gave two stories, on direct examination he said that when the door was opened, he smelled a strong odor of burning marijuana; that he thereupon entered the premises. On cross-examination, he said that he entered, and then he smelled the odor of burning marijuana. At this point, we merely have a discrepancy in his testimony. If his statement on direct examination is correct, I see no reason why, after smelling burning marijuana, he would have to close the door and then knock again and then come in. This would be a foolish act. If his statement on cross-examination is correct, then he had no business being in the position to smell the thing." It is obvious, in determining the issue, that the magistrate gave credence to the officer's testimony that when the door was opened he smelled a strong odor of burning marijuana and thereupon entered the premises.

fendants actually engaged in the commission of a narcotic offense and defendant Lee in the act of committing a felony (see *People* v. *De Santiago,* 71 Cal.2d 18, 29-30 [76 Cal.Rptr. 809, 453 P.2d 353]), there was not the "breaking in" contemplated under section 844. "If uninvited entry through a door opened by an occupant who is then committing a crime is a 'breaking' within section 844 as the language in some of the cases indicates, the officers should have said before they crossed the threshold that they were about to enter the premises to arrest the occupants for being in a place where marijuana was being used. ■ But the court in *People* v. *Boone* (1969) 2 Cal.App.3d 66 [82 Cal.Rptr. 398] stated that it did 'not believe section 844 was intended to apply to such a situation.' We think this conclusion is correct. Section 844 should be read in connection with section 841 of the Penal Code which provides: 'The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, *except when the person . . . to be arrested is actually engaged in the commission of . . . an offense. . . .*'

". . . But when occupants opened both the front and the back doors exposing their activities to the police who stood at the thresholds, the right of privacy protected by section 844 was foregone. With respect to the risk of violence which section 844 seeks to lessen, there is probably less potential for violence when police officers step inside after a door is opened in response to their knock than if they paused to announce that they intended to arrest everyone inside." (*People* v. *Peterson,* 9 Cal.App.3d 627, 633 [88 Cal.Rptr. 597].)

Respondent Lee argues that he "had exhibited a reasonable expectation of privacy in his kitchen from outside prying and that expectation had been violated by unreasonable governmental intrusion with the resulting seizure" in violation of his rights under the Fourth Amendment of the United States Constitution; and that the refusal of the police to identify the informant where he is or might be a material witness upon demand at the preliminary hearing required dismissal. Both of these matters were argued at the preliminary hearing and on the motion under section 995 in the superior court and in each instance the foregoing defense contentions were rejected. The magistrate held that the driveway from which the officer looked into the window and watched defendant Lee packaging the contraband "is a common driveway." The trial court also rejected the defendant's objection that the action of the officer was an invasion of privacy. Likewise the trial judge found "no basis on which to disclose [the informant's] identity"; he said that it did not appear that the informant was a percipient witness on the date of

the arrest, and no showing was made that he could in any way assist the defense in its case.

The order is reversed.

Wood, P. J., and Thompson, J., concurred.

The petition of respondent Lee for a hearing by the Supreme Court was denied December 29, 1971.