[Crim. No. 25854. Second Dist., Div. Three. May 30, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH PALMER GLASSPOOLE, Defendant and Appellant.

**COUNSEL**

Gerald Klausner for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Owen Lee Kwong, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POTTER, J.**—By information defendant was charged in count I with possession of a controlled substance (L-Amphetamine) for purpose of sale (Health & Saf. Code, § 11351), in count II with possession of a controlled substance (pentobarbital) for purpose of sale (Health & Saf. Code, § 11378), in count III with possession of marijuana for purpose of sale (Health & Saf. Code, § 11359), in count IV with possession of a controlled substance (meprobamate and sodium secobarbital) (Health & Saf. Code, § 11377) and in count V with possession of a controlled substance (peyote) (Health & Saf. Code, § 11350). Defendant pleaded not guilty.

Defendant's motion pursuant to Penal Code section 995 was denied. His motion pursuant to Penal Code section 1538.5, by stipulation submitted in part on the preliminary hearing transcript, was denied. Defendant's motion to reconsider his 1538.5 motion was also denied.

By stipulation the matter was submitted to the court on the transcript of the preliminary hearing, with each party reserving the right to offer additional evidence. The court found defendant guilty as charged. Criminal proceedings were suspended and defendant was granted probation for a period of three years on terms and conditions set by the court. Defendant was allowed credit for 17 days already served in custody.

Defendant appeals from the judgment. The appeal lies. (Pen. Code, § 1237, subd. 1.)

*Facts*[1]

On October 21, 1973, Officer Joseph L. Smith, of the City of Long Beach Police Department, Narcotic Detail, received information from an anonymous informant that large quantities of marijuana, cocaine and dangerous drugs were being sold at 814 Main Street in Long Beach.

The following day, at approximately 8:30 p.m., Officers Smith and Scholtz began surveillance of the residence. During the next two hours they observed "six groups of subjects ranging from two to six people" enter the residence, stay a brief period of time and depart. At about 10:30 p.m., the officers returned to the Long Beach Police Department to meet with other officers. Smith, Scholtz and Officer Darrell T. Gath later returned to the residence to attempt to make a purchase of marijuana from defendant. Smith and Gath, dressed in plain clothes, approached the residence and knocked on the front door. Smith smelled the odor of burning marijuana outside the door. Marilyn Glasspoole, defendant's wife, came to the door and said, "Who's there?" Smith replied, "Joe." She then opened the door and Smith said, "Is Ken here?" At that time Smith perceived that the smell of marijuana became much stronger. Marilyn Glasspoole again asked, "Who are you?" and Smith again replied, "Joe." She asked, "What do you want?"; Smith replied, "I want to talk to Ken." She asked, "What's your last name?" As she started to close the door Officer Smith produced his police identification card and advised her that she was under arrest for being in a place where marijuana was being used. Simultaneously Smith put his hand on the door and prevented it from being closed.

As he stepped through the threshold Smith heard male voices and smelled the odor of marijuana which "appeared" to be coming from a room in the southwest portion of the residence. He went to the room and opened the closed door and observed defendant, sitting on the bed, place an object between his legs. The smell of marijuana was very strong in the bedroom. Smith immediately advised defendant and two other subjects that they were under arrest for being in a place where marijuana was being used. Inside the bedroom Smith observed what appeared to be hashish. He requested defendant to stand up. Defendant complied and Smith observed a glass vial on the bed which he had observed defendant

---

[1]We must view the record in the light most favorable to the People, as the party who prevailed below, and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People* v. *Reilly*, 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

place between his legs. It contained a brownish powdery substance which Smith believed to be a dangerous drug. He recovered the hashish and the vial. After being advised by another officer that he had consent to search the residence, Smith opened a metal box located in the bedroom and observed it to contain numerous blue pills. During a further search of the entire residence several other items of contraband were recovered.

On appeal defendant contends that Officer Smith forcibly entered his residence and his inner bedroom door in violation of Penal Code section 844 and that, therefore, the contraband seized therein was improperly admitted in evidence.

### The Police Acted Properly in Entering the Residence

In order to make an arrest a police officer may forcibly enter the door of a house in which is the person to be arrested after (1) identifying himself as an officer; (2) explaining the purpose for which he desired to enter; and (3) demanding entry. (Pen. Code, § 844.[2]) █ The requirements of Penal Code section 844 are met if prior to entry the officers give notice of their presence through knocking or some other means, identify themselves as police officers, and explain the purpose for which admittance is desired. (*People* v. *Buckner,* 35 Cal.App.3d 307, 314-315 [111 Cal.Rptr. 32].) Minimal compliance with the elements of section 844 requires "an effort by the officers prior to entry to communicate to persons inside that they seek to be admitted in order to discharge their duties *as law enforcement officers.*" (*Greven* v. *Superior Court, supra,* 71 Cal.2d at p. 293.) (Italics original.) In the case before us these elements were met. Although initially Officer Smith knocked at defendant's door and identified himself as "Joe," before the end of his conversation with Marilyn Glasspoole, and prior to his entry into her residence, he identified himself as a police officer, and placed her under arrest for being in a place where marijuana was being used. The demand for entry was contained in the purpose for which admittance was sought—demand for entry was made to effectuate her arrest. The record reveals that she understood a demand for entry was made by Smith, since she attempted

---

[2]Penal Code section 844 provides in relevant part: "To make an arrest, . . . a peace officer may break open the door or window of the house in which the person to be arrested is, or in which [the officer has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." Further, a police officer may forcibly enter only after giving "notice of his authority." (*Greven* v. *Superior Court,* 71 Cal.2d 287, 292, fn. 6 [78 Cal.Rptr. 504, 455 P.2d 432].)

to bar his entry by continuing to close the door. "If uninvited entry through a door opened by an occupant who is then committing a crime is a 'breaking' within section 844 as the language in some of the cases indicates, the officers should have said before they crossed the threshold that they were about to enter the premises to arrest the [occupant] for being in a place where marijuana was being used." (*People* v. *Peterson,* 9 Cal.App.3d 627, 633 [88 Cal.Rptr. 597]; *People* v. *Lee,* 20 Cal.App.3d 982, 990 [98 Cal.Rptr. 182].) This is exactly what the officers in the instant case did before they pushed open the door and crossed the threshold.

■ Moreover, we think that the entry in this case is not subject to the requirements of section 844. Officer Smith had probable cause to arrest Marilyn Glasspoole for being in a place where marijuana was used when the door was opened in response to his knock. Inasmuch as at the time the door opened the officer perceived an occupant actually engaged in the commission of a narcotic offense in his immediate presence, there was not the "breaking in" contemplated under section 844.

"If uninvited entry through a door opened by an occupant who is then committing a crime is a 'breaking' within section 844 as the language in some of the cases indicates, the officers should have said before they crossed the threshold that they were about to enter the premises to arrest the occupants for being in a place where marijuana was being used. But the court in *People* v. *Boone* (1969) 2 Cal.App.3d 66 [82 Cal.Rptr. 398] stated that it did 'not believe section 844 was intended to apply to such a situation.' We think this conclusion is correct. Section 844 should be read in connection with section 841 of the Penal Code which provides: 'The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, *except when the person . . . to be arrested is actually engaged in the commission of . . . an offense. . . .*' (Italics added.)" (*People* v. *Peterson, supra,* 9 Cal.App.3d at p. 633; see also *People* v. *Lee, supra,* 20 Cal.App.3d at pp. 989-990.)

*The Police Acted Improperly in*
*Entering the Inner Bedroom*

■ Defendant contends that the evidence in plain view seized from the bedroom should have been suppressed because the police failed to

comply with Penal Code section 844 prior to entering the bedroom.[3] We agree.

The lawfulness of a search for additional suspects, incident to arrest, is governed by the standards set forth in *People v. Block,* 6 Cal.3d 239, 244 [103 Cal.Rptr. 281, 499 P.2d 961]:

"As a general rule, the reasonableness of an officer's conduct is dependent upon the existence of facts available to him at the moment of the search or seizure which would warrant a man of reasonable caution in the belief that the action taken was appropriate. (*Terry v. Ohio,* 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868], involving police 'stop and frisk' procedures.) And in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or 'hunches,' but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary. (*Id.,* at pp. 21-22, 27 [20 L.Ed.2d at pp. 905-906, 909]; *Sibron v. New York,* 392 U.S. 40, 63-64 [20 L.Ed.2d 917, 934-935, 88 S.Ct. 1889]; *Remers v. Superior Court,* 2 Cal.3d 659, 664 [87 Cal.Rptr. 202, 470 P.2d 11] [probable cause to arrest]; *Cunha v. Superior Court,* 2 Cal.3d 352, 355-356 [85 Cal.Rptr. 160, 466 P.2d 704] [cause to detain, 'pat down,' and arrest]; *People v. Collins,* 1 Cal.3d 658, 662-663 [83 Cal.Rptr. 179, 463 P.2d 403] ['pat down' search].)

"The rationale underlying the foregoing rule is concisely set forth in *Terry v. Ohio, supra,* 392 U.S. 1, 21-22, as follows: 'The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. [Fn. omitted.] And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? [Citations.] Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. [Citations.]' (See *People v. Collins,*

---

[3]It is conceded that Officer Smith entered the bedroom without first announcing his authority and purpose for entry, and demanding entry.

*supra,* 1 Cal.3d 658, 663.)" In the instant case it seems evident that Officer Smith had reasonable cause to believe, based upon facts available to him at the time he acted, that additional persons were in the premises and in a place where marijuana was being used.

But this does not dispose of the issue before us. In *People* v. *De Santiago,* 71 Cal.2d 18, 29-30 [76 Cal.Rptr. 809, 453 P.2d 353], our Supreme Court said: " 'Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen.' [Citation.] The reason for entry without announcement must be additional to the basic reason for entry." (Fn. omitted.) Thus unannounced entry through the inner door cannot be justified on the basis of the officer's reasonable belief that additional suspects were behind the closed door and in a place where marijuana was being used.[4]

In *People* v. *Webb,* 36 Cal.App.3d 460 [111 Cal.Rptr. 524],[5] the court held that Penal Code section 1531, pertaining to notice requirements where a search warrant is involved, applies to inner doors because the statute explicitly includes inner doors.[6] The applicability of the notice requirement of section 844 to the breaking of an inner door for the purpose of making an arrest has not been passed upon in any reported case. Our Supreme Court left the question open in *People* v. *King,* 5 Cal.3d 458, 464 [96 Cal.Rptr. 464, 487 P.2d 1032]. In *King,* however, the court did say that "the requirements for forcing entry to make an investigation should be no less stringent than they are where entry is made under a search warrant or for the purpose of arresting someone,"[7]

---

[4]Neither *Peterson, supra,* nor *Lee, supra,* hold anything contrary. In both these cases the door had been voluntarily opened by the occupant and, therefore, these cases stand only for the proposition that in such circumstances a forced entry by an arresting officer is permissible where a crime is being committed in his immediate presence. In these cases there is not the potential for violence inherent in unannounced entry through a previously closed door.

[5]*People* v. *Webb, supra,* was decided December 31, 1973. The violations alleged in counts I-V occurred on October 22, 1973. The preliminary hearing took place on November 15, 1973. Defendant's 1538.5 motion was heard and denied on January 1, 1974.

[6]Penal Code section 1531 provides in relevant part: "The officer may break open any outer or *inner door or window of a house* . . . to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." (Italics added.)

[7]Penal Code sections 844 and 1531 "are 'identical in principle' insofar as their announcement requirements are concerned." (*Greven* v. *Superior Court,* 71 Cal.2d 287, 292, fn. 6 [78 Cal.Rptr. 504, 455 P.2d 432]; see also *People* v. *Garber,* 275 Cal.App.2d 119, 131 [80 Cal.Rptr. 214], where the authorities are collected.)

noting that: "As stated by this court in *Duke* v. *Superior Court,* 1 Cal.3d 314, 321 (3) [82 Cal.Rptr. 348, 461 P.2d 628]: 'The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder.' Although there is no statutory requirement with respect thereto, it would appear that the same policy should govern in cases where entry is sought for the purpose of investigating possible criminal offenses." (*Id.,* fn. 3.)

It is obvious that purposes (3) and (4) stated in the above quotation call for application of the notice requirements of section 844 to inner doors equally with outer doors where, as in this case, the circumstances of the entry of the outer door do not give any notice to the occupants of closed inner rooms.[8] We are, moreover, mindful that "that particular application of the exclusionary rule which results from noncompliance with either Penal Code section 844 or Penal Code section 1531 is somewhat different from the application in other cases, in that it is intended to give a benefit to innocent persons and, more particularly, to the police officers themselves, that is over and above the general protection of privacy which is secured by the Fourth Amendment." (*People* v. *Webb, supra,* 36 Cal.App.3d at p. 466.)

■■ ■■■ In light of the circumstances of this case,[9] we hold that in failing to comply with the announcement requirements of Penal Code section 844, the officer entered the bedroom unlawfully, and the evidence in plain sight seized therein was improperly admitted in evidence. We are unable on the record to conclude that this error "was harmless beyond a reasonable doubt." (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The judgment, therefore, must be reversed.

[8]Officer Smith identified himself to a single occupant (Marilyn Glasspoole) only, by means not perceptible to the occupants of the bedroom, and knew she had no opportunity to pass on the information.

[9]Nothing in the record indicates that Officer Smith was possessed of any information suggesting that (1) the occupants of the bedroom were disposed to employ firearms, (2) that they were engaged in destroying evidence, or (3) that the value of the contraband involved would make probable "violent and desperate efforts to resist the arrest and

The admissibility of the additional evidence discovered in the course of the allegedly consensual general search of defendant's residence cannot be determined on the basis of the present record. In any retrial of this matter, the trial court shall determine whether any consent, if given, was tainted by the unlawful entry.

The judgment is reversed.

Cobey, Acting P. J., and Allport, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 23, 1975. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.

---

defend the contraband." (See *Guidi* v. *Superior Court,* 10 Cal.3d 1, 9 [109 Cal.Rptr. 684, 513 P.2d 908].)

The People's reliance upon *Vaillancourt* v. *Superior Court,* 273 Cal.App.2d 791 [78 Cal.Rptr. 615], is misplaced. In that case the officer who smelled the odor of burning marijuana entered a hotel room to arrest the occupants. In justifying the entry without a warrant, the court said (273 Cal.App.2d at p. 797): "Here, the officers detected the smell of burning marijuana which would clearly indicate that a crime was being committed in their presence. *The burning would also indicate that the evidence was in fact disappearing,* unlike the situation in *Marshall* where there was no imminent destruction of the contraband. (*Cf. People* v. *Gaines* (1968) 265 Cal.App.2d 642, 647 [71 Cal.Rptr. 468.].) We therefore conclude that the officers did have probable cause to effect an arrest. [Citations.]" (Italics added.) Compliance with section 844 was not, however, excused on this basis; instead, substantial compliance was found. Though the slow burning of marijuana involved in its use (essential to probable cause to arrest in this case) probably would result in its destruction during the period normally required to obtain a warrant, such use does not make destruction imminent during the time required for compliance with the provisions of section 844.