[Crim. No. 28078. Second Dist., Div. Two. Nov. 30, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
LAWRENCE EDWARD MURRAY, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Mitchell J. Grossman and Laurence S. Smith, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**BEACH, J.**— ██ Lawrence Murray was charged with possession of marijuana (Health & Saf. Code, § 11357, subd. (a)), possession of

marijuana for sale (Health & Saf. Code, § 11359), and possession of a controlled substance (Health & Saf. Code, § 11378). Finding that the officers did not comply with Penal Code section 844, the trial court set aside the information pursuant to section 995 of the Penal Code. The People appeal from the order setting aside the information.

FACTS:

Deputy James Smith testified at the preliminary examination that on August 20, 1975, at about 2:20 a.m. he received a call concerning loud music at an address in Paramount. He arrived at the address, heard loud music, knocked, and received no answer. He knocked again and received no answer; he then knocked loudly, announced who was at the door, their presence, and their reasons for being there. After about 10 seconds, the music was turned down, and Deputy Smith heard muffled talking. The door was opened. Light smoke came from the door; Officer Smith smelled a "real strong odor of burning marijuana." He also heard sounds like a toilet flushing, and his partner went to investigate.

Officer Smith detained occupant Miller and retrieved several burned marijuana cigarettes. His partner brought Mr. Evers from the bathroom. Evers stated that the cigarettes were not his but that they belonged to his roommate, who was in a bedroom with his girlfriend. Deputy Smith approached the bedroom that Evers had indicated. The door was partially open;[1] the lights were off. Deputy Smith opened the door and stepped in; he turned the lights on.[2] He saw an open closet with a plastic bag containing marijuana; a brown paper sack was open next to it, and Smith saw a white powdery substance that he thought might be heroin. Murray, the defendant, said that it was only seconal. On the nightstand Officer Smith found a scale; baggies, marijuana residue, and bags of the white powdery substance were found below the nightstand. A larger plastic bag containing marijuana stems and an open grocery bag with a brick of marijuana wrapped in light blue paper were also next to the box at the foot of the bed.

[1]At the preliminary hearing, there is no evidence of how open the door was. At the time of the hearing on the motion pursuant to section 995, the parties agreed that defendant and his female friend would testify that the door was open one to two inches, a crack, while the officers would testify that it was open six to eight inches.

[2]Appellant and a woman were together in bed. After the officers entered, the woman put her clothes on while still under the covers.

The court below found that the door was "partially open" but not open enough that the officer could walk in without opening it more. The court found a violation of section 844 of the Penal Code and therefore granted the 995 motion.

CONTENTION ON APPEAL:

The People contend that Penal Code section 844 does not apply to inner doors. Appellant argues that it was reasonable and proper for Deputy Smith and his fellow deputy to search the house for additional suspects immediately after Miller and Evers were arrested; that the history of section 844 and its common law predecessor indicates it was not intended to apply to inner doors; that the purposes of section 844 are properly and adequately served by making it applicable to outer doors only; that the court in *People* v. *Glasspoole*, 48 Cal.App.3d 668 [121 Cal.Rptr. 736], erred in reasoning that section 844 is identical in application to section 1531 of the Penal Code; and that under the federal knock-notice statute, by implication the requirements of knock and notice have no application to inner doors.

DISCUSSION:

*Compliance with the notice requirement of Penal Code section 844 was not necessary in the instant case.*

Section 844 of the Penal Code provides: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The only question in the instant case is whether the police officer was required to demand admittance and explain the purpose for which admittance was desired before entering the bedroom in which appellant was found.

We have no doubt from the record before us that Officer Smith had the right to look for defendant in the bedroom. (*People* v. *Block,* 6 Cal.3d 239, 244-245 [103 Cal.Rptr. 281, 499 P.2d 961].) However, once he reached the door of the bedroom, the question is whether he had to

comply with the notice requirement of section 844 at an inner door and whether his entry constituted a "breaking."[3]

In *People* v. *Glasspoole,* 48 Cal.App.3d 668, 672-673 [121 Cal.Rptr. 736], police legally entered a house; they had been informed that large quantities of marijuana, cocaine, and dangerous drugs were being sold at that address. One of the police officers heard male voices and smelled the odor of marijuana that appeared to be coming from a room in the southwest portion of the residence. The officer opened the closed door and observed defendant place an object between his legs. He arrested defendant and two other subjects for being in a place where marijuana was being used. Once inside the bedroom, the officer observed what appeared to be hashish. He also recovered a vial that defendant attempted to hide. On appeal the court in *Glasspoole, supra,* 48 Cal.App.3d at p. 677, held that the entry into the bedroom was unlawful. The court held that the notice requirement of section 844 applied to the breaking of the closed inner door for the purpose of making an arrest.

In *Glasspoole, supra,* the court considered the entry of the officers by opening a closed door. By contrast in *People* v. *Livermore,* 30 Cal.App.3d 1073 [106 Cal.Rptr. 822], and *People* v. *Castaneda,* 58 Cal.App.3d 165 [129 Cal.Rptr. 755], this court held that after a lawful entry into the premises a nonviolent entry through an open inner door was not a breaking within the meaning of Penal Code section 1531 so as to require knock and notice provided for in that statute. The matter at bench involves the question of knock and notice under Penal Code section 844 rather than under Penal Code section 1531. The knock and the announcement provisions found in each statute are similar and the reasons for the presence of such provisions in each statute are the same. (See *People* v. *Glasspoole, supra,* 48 Cal.App.3d at p. 676, fn. 7; *People* v. *Superior Court (Fall),* 31 Cal.App.3d 788, at p. 797 [107 Cal.Rptr. 756], stating "The right protected by Penal Code section 844, while substantial, is of a lesser magnitude than that protected by the more general requirement of probable cause for a search. . . .") At bench the bedroom door was open. The unannounced entry was therefore lawful.

We recognize that an entry through an open door might be violent or even though nonviolent, under *People* v. *Bradley,* 1 Cal.3d 80 [81

---

[3]If there is no breaking, there is no need to comply with section 844 even if inner doors are protected by that section. (*People* v. *Superior Court (Proctor),* 5 Cal.App.3d 109, 113 [84 Cal.Rptr. 778]; *People* v. *Superior Court (Fall),* 31 Cal.App.3d 788, 797 [107 Cal.Rptr. 756].)

Cal.Rptr. 457, 460 P.2d 129], might constitute a breaking. However, *People* v. *Bradley, supra,* holds that nonviolent entry through an open door is a "breaking" and requires knock and notice only "where, [as in *Bradley*], officers walk into a dwelling through an open door at nighttime when the occupant apparently is asleep. . . ." (*People* v. *Bradley, supra,* 1 Cal.3d at p. 87.) At bench, again by contrast, we are concerned with the entry through an open inner door after lawful entry into the house. Appellant urges this court to treat the facts of this case as though the door were in fact closed, but that even so the knock and notice provisions of Penal Code section 844 do not apply and the decision of *People* v. *Glasspoole, supra,* is incorrect. Appellant urges this court to declare *People* v. *Glasspoole* incorrectly decided. However, the fact is the door at bench was open, even though it was open only a few inches.[4] The fact remains that the door was not closed shut. That fact is significant. It indicates less expectation of privacy by the occupant of the room; less likelihood of surprise upon the entrance of others such as occupants of the house; and less likelihood of violent confrontation and physical danger to occupants, police, and other third persons. Moreover, the defendant's own roommate, who was in the house, directed the police officer to the room where defendant was. This apparent permission from the cotenant of the house is another significant factual difference from *Glasspoole, supra.*

We need not discuss or conjecture what our decision might be if the inner door had been closed. We limit our discussion and decision to the facts of the matter at bench.

The order of dismissal is reversed.

Roth, P. J., and Fleming, J., concurred.

---

[4]According to the testimony the opening ranged from about one to eight inches.