[Crim. No. 15752. Second Dist., Div. Two. Dec. 10, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL BOONE, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—In view of the fact that the arresting officers were dressed in plainclothes and using an unmarked vehicle when they forced entry into defendant's residence at night, can we hold that the requirements of section 844 of the Penal Code had been met?

We have heretofore identified the essential requirements of section 844 as (1) identification of themselves by the police; (2) explanation of their purpose; and (3) demand for entry. (*People* v. *Superior Court*, 274 Cal.App. 2d 578 [79 Cal.Rptr. 55].) These requirements may be satisfied by literal

compliance, or by substantial compliance, or their performance in a given instance may be excused.

Literal compliance is not a factor here, and hence requires no comment.

█ Substantial compliance expresses a rule of interpretation which derives from general maxims of equity—that substance governs over form, that no one is required to perform an idle act. (Civ. Code, §§ 3528, 3532.) Hence if the essence of a requirement has been met, or if its performance would be superfluous, then the law holds that the requirement has been substantially complied with. The application of the rule may be seen in *People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116], which upheld the police identification and request for entry in that case and in *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665], which held that persistent knocking by the police, announcement of their identity, and demand for entry complied with the section. █ The limits of the rule of substantial compliance appear in *People* v. *Rosales,* 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489], which held that police identification without a demand for entry or explanation of purpose did not amount to substantial compliance with the statute. Said the court: "Such identification alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile." The further limits of the rule appear in *Greven* v. *Superior Court,* 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432], where the court said: "It is clear that the cases here under consideration stand for the proposition that an entry is not *necessarily* unlawful because the officers fail to make an express announcement of purpose. It is equally clear that they go no further than that. Neither they nor any other decision of this court has ever held that 'substantial compliance' with section 844 can be achieved in the absence of an announcement by the officers identifying themselves as such."

█ Our original opinion assumed that those inside the residence knew that their visitors were police officers and therefore identification by the police would have been a useless act. It is undisputed that (1) entry was forced into an occupied residence; (2) during the nighttime; (3) by police officers not in uniform; (4) who had driven up to the residence in an unmarked vehicle. Under these circumstances, can it be assumed with reasonable certainty that those inside the house knew their visitors were peace officers engaged in the performance of their duties and hence official identification by the visitors would have been an idle gesture? The only direct testimony on this subject was to the contrary, for Mrs. Boone testified

that she thought the men running toward her house were intruders or burglars. We are not required to accept her testimony, and we would not do so if it were contradicted by circumstances which clearly indicated its implausibility. For example, if uniformed officers had arrived on the scene in a marked police vehicle, with sirens wailing, and red lights flashing, then we would give little credence to statements of those inside that they did not know their visitors were police. If such a trumpeting of status had occurred we could assume with confidence that those inside the house knew their visitors were police officers engaged in law enforcement activities and hence further identification by the police would have been a useless act.

But at bench no external symbols or trappings identified the men who forced entry into the premises as peace officers engaged in the performance of their official duties, and from the circumstances we cannot be reasonably certain that those inside knew that those outside who sought to enter were police. Hence the requirement for identification still carried meaning. The practical dangers attached to forcible intrusion by peace officers unidentified as such have been summarized by Mr. Justice Brennan, dissenting, in *Ker* v. *California,* 374 U.S. 23, at pp. 57-58 [10 L.Ed.2d 726, at p. 752, 83 S.Ct. 1623]: "Beyond these constitutional considerations, practical hazards of law enforcement militate strongly against any relaxation of the requirement of awareness. First, cases of mistaken identity are surely not novel in the investigation of crime. The possibility is very real that the police may be misinformed as to the name or address of a suspect, or as to other material information. That possibility is itself a good reason for holding a tight rein against judicial approval of unannounced police entries into private homes. Innocent citizens should not suffer the shock, fright or embarrassment attendant upon an unannounced police intrusion. Second, the requirement of awareness also serves to minimize the hazards of the officers' dangerous calling. We expressly recognized in *Miller* v. *United States, supra* (357 U.S. at 313, note 12 [2 L.Ed.2d at p. 1340, 78 S.Ct. 1190], that compliance with the federal notice statute 'is also a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder.' Instead, one of the principal objectives of the English requirement of announcement of authority and purpose was to protect the arresting officers from being shot as trespassers, '. . . for if no previous demand is made, how is it possible for a party to know what the object of the person breaking open the door may be? He has a right to consider it as an aggression on his private property, which he will be justified in resisting to the utmost.' *Launock* v. *Brown,* 2 B. & Ald. 592, 594, 106 Eng. Rep. 482, 483 (1819)."

On the facts of this case we conclude that identification by the police

would not have been a useless act and that hence requirements of section 844 had not been substantially met.

■ But the requirements of section 844 need not always be met. Where exigent circumstances make an immediate entry imperative, compliance with the statute may be excused. Exigent circumstances have not been comprehensively defined, but they include instances where those inside are likely to be armed, or likely to attempt escape, or likely to commit further crimes of violence if entry is sought in the statutory manner. In such instances the need to neutralize specific hazards excuses compliance with the statute and justifies forcible entry without identification, demand, and statement of purpose. ■ Exigent circumstances may also include instances which involve pending destruction of evidence. The extent to which a prospective danger of such destruction will justify an unannounced entry is not entirely clear (*People* v. *De Santiago,* 71 Cal.2d 18, 29 [76 Cal.Rptr. 809, 453 P.2d 353]), but contemporaneous attempts at destruction of evidence, or conduct which reasonably appears designed to that end, constitute circumstances which will excuse compliance with section 844. The logic of this excuse is that those inside have discovered that their prospective visitors are police and have consequently initiated steps to destroy incriminating evidence.

■ We originally concluded that compliance with section 844 was excused because of attempted destruction of evidence, citing *People* v. *De Santiago,* 71 Cal.2d 18, 29 [76 Cal.Rptr. 809, 453 P.2d 353], and *People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]. We found present the two elements which justify the conclusion that evidence is about to be destroyed— (1) the approach of the police has become known to the suspect, and (2) the suspect's reaction reasonably suggests to the police that he is about to destroy evidence. But the first element assumes that the suspect knows in fact that his visitors are police. Here we find ourselves back on the same point we considered on the issue of substantial compliance: do the facts support the inference that the residents have identified their visitors as police? ■ Even if it appears more probable than not that the inference may be drawn, we think a balance of probability in favor of the inference is not enough, that forcible intrusion onto the premises of another without compliance with section 844 is only justifiable when the circumstances forcefully establish the existence of a valid excuse. Where the circumstances relied on to support the excuse are susceptible to two interpretations, we think the residents are entitled to the benefit of the safeguards of the statute.

In reaching this conclusion we have been influenced by the need for added caution by the police in carrying out forcible intrusions into residences during the hours of darkness. Such nighttime intrusions are disfavored under California law. Section 1533 of the Penal Code, dealing with the service of search warrants, requires the warrant to be served during the daytime unless, on a showing of good cause, the magistrate has inserted a direction in the warrant that it may be served during the night. The comparability of the Penal Code section covering forcible entry to make a search (§ 1531) with that covering forcible entry to make an arrest (§ 844) has been noted by the Supreme Court. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432].) ■ An extension of this comparability suggests to us that forcible entry at night to make an arrest demands a more rigorous compliance with the technicalities of law enforcement than does similar action taken during the daytime. (Cf. *People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129] (31 October 1969).) The increased chances for error during a nighttime visitation furnish practical reinforcement for a strict construction of the requirements of the statute.

■ We conclude that the requirements of section 844 were neither substantially complied with nor were they excused. Consequently, the narcotics seized during the arrest were inadmissible, and the judgment of conviction must be, and hereby is, reversed.

Roth, P. J., and Wright, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 5, 1970. McComb, J., was of the opinion that the petition should be granted.