[Crim. No. 16961. Second Dist., Div. One. July 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER JOHN PETERSON, Defendant and Appellant.

## COUNSEL

Richard E. Erwin, Public Defender, Donald G. Griffin and John D. Russel, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gil T. Siegel, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GUSTAFSON, J.**—On July 13, 1968, an informant named Bradley took Sergeant Rena of the Port Hueneme Police Department to the residence of Brion Sinkey where Sergeant Rena (posing as Bradley's brother-in-law) observed a marijuana plant growing in a wine bottle in the kitchen.

The next evening, acting on information that there would be a gathering

of people at the Sinkey residence for a narcotics party, Sergeant Compton, Sergeant Rena and Detective Cuevas went to the Sinkey residence to investigate the possibility of a narcotic violation.

All of the officers were dressed in plain clothes. Compton and Rena went to the front door and Compton knocked three or four times. The door was opened 15 to 30 seconds later. While neither officer saw who opened the door, one of the occupants was seen standing by it after it was opened. As soon as the door was opened both Compton and Rena smelled a strong odor of burning marijuana. They stepped inside the door and informed all in the room that they were under arrest for being in a place where marijuana was being used, a violation of section 11556 of the Health and Safety Code.

While Compton and Rena were at the front door, Cuevas went around to the rear. Cuevas knocked at the door and heard someone ask, "Who is it?" Cuevas answered, "The police." The same person repeated "Who is it?" and Cuevas replied "Cuevas." The back door was opened by Paul Emile LaPointe. Cuevas smelled the odor of marijuana and entered the residence.

A search revealed marijuana in various places throughout the residence, including a marijuana plant in a wine bottle.

Seven persons were in the apartment when the officers entered. Each of the seven was examined by the officers who concluded that all of them were under the influence of marijuana.

After the officers had been in the apartment for 10 to 15 minutes, the defendant knocked on the door. He was admitted by Rena and was told to sit down. Subsequently the defendant was examined by one of the officers and, when it was determined that he too was under the influence of marijuana, was arrested.

The defendant, DeLorme and Tobin (two other arrestees) were transported to the police station together. Upon arrival at the police station, a bag containing hashish (a concentrated form of marijuana) was discovered under the seat where the defendant had been sitting. This was the contraband which formed the basis for the defendant's conviction.

The defendant raises the issue of whether the officers' entries were in violation of section 844 of the Penal Code. The defendant contends that the entries were unlawful, and therefore the subsequent arrest of the defendant was the result of the unlawful entries. He argues that since the arrest was the result of the unlawful entries, the contraband discovered in the police car was tainted by the unlawful arrest.

Section 844 of the Penal Code states: "To make an arrest . . . a peace officer, may break open the door or window of the house in which the person to be arrested is . . . after having demanded admittance and explained the purpose for which admittance is desired."

While section 844 was enacted in 1872 and has existed in its present form since 1873, it is only recently that the section has been utilized as a fundamental restriction on police conduct.

The leading case in the area of "knock and notice" requirements is *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706] which held that evidence obtained in violation of Penal Code section 1531 is inadmissible. ▮ While section 1531 relates to search warrants, it is a companion section to section 844 which requires the same conduct on the part of the police in making an arrest. (See, *e.g., People* v. *De Santiago* (1969) 71 Cal.2d 18 [76 Cal.Rptr. 809, 453 P.2d 353].) *De Santiago* acknowledged that *Gastelo* represented a departure from the decisional law as it existed prior to 1967.

▮ Section 844 applies only if there is an entry preceded by a "breaking." In *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489] the Supreme Court said that a "breaking" means at the very least unannounced entries that would be considered "breaking" as that term is used in defining common law burglary. *Rosales* held that opening an unlocked screen door of a residence was a violation of section 844. In *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129] it was held that there was a violation of section 844 when officers walked through an open door of a residence at night when the occupant was apparently asleep. *People* v. *Arias* (1970) 6 Cal.App.3d 87 [85 Cal.Rptr. 479] extended *Bradley* to cover police officers who walk through an open bedroom door in the daytime without knocking or announcing their authority and purpose for entering.

▮ However, every entry by a police officer who does not comply with the strict requirements of section 844 does not taint the resulting arrest. Noncompliance with section 844 is excused where the police officer has a reasonable and good faith belief that compliance will increase his peril, frustrate an arrest or permit the destruction of evidence. (*People* v. *Rosales* (1968) *supra,* 68 Cal.2d 299; *People* v. *De Santiago* (1969) 71 Cal.2d 18 [76 Cal.Rptr. 809, 453 P.2d 353].) The belief supporting the noncompliance must be based on the officer's knowledge of the circumstances of the particular case, not on the officer's general experience with the type of crime involved. For example, noncompliance is not excused

when the officer believes that *all* narcotics suspects will attempt to dispose of the evidence if they are given a warning. (*People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706].)

In other situations, "substantial compliance" with section 844 has been held to be sufficient. For example, an entry is not unlawful when officers fail to make an express announcement of purpose when the circumstances are such that the occupant should reasonably know the officers' purpose. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Rosales* (1968) *supra*, 68 Cal.2d 299.)

 The initial question presented here is whether the entry is subject to the requirements of section 844. We hold it is not.

Sergeant Compton testified during the hearing on the motion to suppress evidence (pursuant to § 1538.5 of the Pen. Code) that the purpose of going to the Sinkey residence was to investigate a potential narcotic violation. The plan was to go to the residence, "knock on the door, see if someone would let us in." Sergeant Compton testified that "if someone invited me in the house, [and] I saw the marijuana plant, I was going to arrest them for possession of marijuana."

In *People* v. *Boone* (1969) 2 Cal.App.3d 66 [82 Cal.Rptr. 398] this court held that section 844 did not apply when a uniformed police officer went to an apartment and knocked on the door for the purpose of investigating a "disturbance." The occupant opened the door in response to the knock and the officer could see and smell marijuana. The officer forced his way into the apartment and arrested the occupants. The court said: "It would run counter to common sense to hold that in this situation, the officer would have to re-knock on the door and stop to tell defendant Boone why he was coming in and to step aside." (*People* v. *Boone, supra,* at p. 69.)

In *Boone* there was nothing in the evidence to show that the officer went to the door of the defendant's apartment with the intention of making an arrest at the time he knocked on the door. In the instant case, the officers did not intend to make an arrest unless they were invited in. In *Boone* the police officer was in uniform, while in the instant case the officers were in plain clothes.

 While a uniform identifying the entering person as an officer may be relevant in cases where the entry is subject to the requirements of section 844 and the question is whether there was "substantial compliance," the existence of a uniform is not relevant to the question of whether the entry is subject to the requirements of section 844.

*People* v. *Superior Court* (1970) 5 Cal.App.3d 109 [84 Cal.Rptr.

778] held there was no "breaking" within the meaning of section 844, even as that term has been expanded by *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], where officers, with probable cause to make an arrest, tricked the occupant into opening the door for a decoy, then "followed without knocking, identifying themselves and stating their purpose." Since the officers were hidden when the door was opened, whether they were in uniform was immaterial to the question of whether section 844 applied to their entry.

While in the present case the officers did not have probable cause to make an arrest when they knocked, as soon as the door was opened in response to their knock and they smelled the marijuana, they had probable cause to arrest the occupants for being in a place where marijuana was being smoked. (*People* v. *Nichols* (1969) 1 Cal.App.3d 173 [81 Cal. Rptr. 481].)

If uninvited entry through a door opened by an occupant who is then committing a crime is a "breaking" within section 844 as the language in some of the cases indicates, the officers should have said before they crossed the threshold that they were about to enter the premises to arrest the occupants for being in a place where marijuana was being used. But the court in *People* v. *Boone* (1969) 2 Cal.App.3d 66 [82 Cal.Rptr. 398] stated that it did "not believe section 844 was intended to apply to such a situation." We think this conclusion is correct. Section 844 should be read in connection with section 841 of the Penal Code which provides: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, *except when the person . . . to be arrested is actually engaged in the commission of . . . an offense. . . .*" (Italics added.)

Had the arrestees in the case at bench been holding a marijuana party on the front lawn of the premises, officers observing what was going on could have arrested them with no formalities. Because they were inside a house, their activities would have gone undetected if no one had opened a door. But when occupants opened both the front and the back doors exposing their activities to the police who stood at the thresholds, the right of privacy protected by section 844 was foregone. With respect to the risk of violence which section 844 seeks to lessen, there is probably less potential for violence when police officers step inside after a door is opened in response to their knock than if they paused to announce that they intended to arrest everyone inside.

The defendant argues that the evidence is insufficient to support the finding by the jury that he was ever in possession of the contraband found in the police vehicle. We do not agree.

■ The test on appeal is whether there is any substantial evidence from which a reasonable trier of fact could find guilt beyond a reasonable doubt.

■ The prosecution presented testimony from which the jury could infer that the defendant was in possession of the contraband. The defendant and DeLorme were handcuffed with their hands behind their backs, while Tobin was not handcuffed. Before the three persons were placed in the police vehicle, one of the officers transporting them to the police station lifted the rear seat and observed that there was nothing unusual in the vehicle.

On the way to the station the defendant was sitting on the left side, DeLorme in the middle and Tobin on the right side. The trip to the police station took two or three minutes during which time Officer Henderson was turned in his seat constantly observing the three prisoners.

Defendant changed position and moved his hands and elbows several times. DeLorme did not move at all. Tobin touched his ear once, but the rest of the time Tobin had his hands on the back of the front seat.

After they arrived at the police station, the contraband was discovered under the seat where the defendant had been sitting. It was reasonable for the jury to conclude that there was no contraband in the car at the time the three prisoners were placed inside. Therefore, one of the three put it under the seat during the ride to the station. All three were observed during the trip to the station and the defendant was the only one seen moving about in such a way as to have the opportunity to place anything behind or under the seat. The jury was entitled to infer from this evidence that only the defendant had the opportunity to place the contraband where it was found. Under the circumstances, the jury could conclude that the defendant possessed the contraband before it was found in the vehicle.

The defendant relies upon the fact that he was searched before he was placed in the police vehicle to establish that he did not have the contraband in his possession before entering the vehicle. However, the jury was entitled to believe the testimony of the officers that the defendant was given only a cursory search for weapons which would not have revealed the contraband. One of the officers testified that when he searched the defendant he would not have removed anything which did not feel like a weapon. While the defendant testified that a more thorough search was made, the jury was entitled to believe the officer and not the defendant. The jury could also believe the testimony that DeLorme was given an extensive search which would have revealed any contraband on his person.

Therefore it was reasonable for the jury to conclude that the defendant had the contraband before he was put into the police vehicle and that the

defendant attempted to dispose of it on the way to the police station. The evidence is sufficient to support the finding of the defendant's guilt.

The order granting probation is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 10, 1970.