Opinion
KLEIN, P. J.
Defendant Angel Jurado Negrete was charged by information with possession of heroin for the purpose of sale (Health & Saf. Code, § 11351). After defendant’s motion to suppress evidence pursuant to Penal Code section 1538.5 and his request that the court view the scene of the arrest were both denied, a jury found defendant guilty as charged. The court thereafter granted defendant’s motion to reduce his conviction to simple possession of heroin (Health & Saf. Code, § 11350), and judgment of imprisonment was entered thereon.
On this appeal, in which defendant’s sole challenge is to the propriety of the denial of his suppression motion, the following related contentions are made: (1) the arresting officer failed to comply with the announcement and demand-for-entry provisions of Penal Code section 844;[1] and (2) the arresting officer’s version of the facts surrounding the arrest was inherently improbable. We conclude that defendant’s contentions are without merit and, therefore, affirm the judgment.
Facts
The following statement of facts is limited to the evidence presented at the hearing on the section 1538.5 motion.
Upon receiving an anonymous scratch pad message (later destroyed) and a corroborating telephone call to the effect that defendant was selling *333 heroin from a motel located at 12215 San Fernando Road, John Applegarth, a narcotics officer with the Los Angeles Police Department for six years, and several fellow officers established a surveillance of the indicated location at approximately 8 p.m. on January 27, 1977. Officer Applegarth had seen defendant almost one hundred times in the past and had arrested defendant for heroin use five to ten times over the previous four-year period, including one arrest just two weeks earlier.
Shortly after the surveillance began, Officer Applegarth observed a known heroin addict, Hector DeAnda, drive up to the motel with a female passenger and get out of his car. When DeAnda left the motel shortly thereafter, he appeared to be under the influence of heroin, causing Officer Applegarth and another officer to follow him in their car. In the meantime, Applegarth had received a radio communication from his partner, Officer Peters, who had been stationed near the door of defendant’s motel room; Peters reported that he had observed an apparent heroin transaction take place between DeAnda and an occupant of the room.
The two pursuing officers subsequently forced DeAnda to pull his car over after he ran a red light in an attempt to elude them. As the vehicles came to a stop, Officer Applegarth observed DeAnda hand a balloon-like object to his passenger, who then swallowed it. Applegarth asked DeAnda if he would aid the investigation by making another heroin purchase at the motel, but DeAnda refused. DeAnda and his female passenger were then placed under arrest.
Officer Applegarth thereafter returned to the motel to “conduct an investigation” of defendant. Applegarth and the other officers who participated in the stakeout of the motel were in plain clothes. The officers possessed neither a search nor arrest warrant, but Applegarth was aware of the fact that defendant was then on summary probation, one of the conditions of which was that he submit his person or property to searches at any time of the day or night.[2]
After directing Officer Peters to cover the rear bathroom window of the suspect motel unit, Officer Applegarth approached the front door of the unit and observed that the ragged curtains on an adjacent window did not *334 completely cover each windowpane. By looking through a six- to ten-inch unobstructed portion of the window, Applegarth could see through the dimly lit front room into the lighted and open bathroom, where defendant was standing at a distance of approximately 12 feet from the officer’s vantage point. Defendant was using a razor blade to cut or mix a mound of tannish powder which had been placed upon the surface of a hand-held mirror; based upon his experience as a narcotics officer, Applegarth concluded that defendant was “cutting heroin.”
While continuing to observe through the window, Officer Applegarth knocked on the doorpost. In response, defendant placed the mirror with the powder on it out of view and approached the front door. When defendant was within a few feet of the window, he looked at Applegarth, did a “double take,” and began running back toward the bathroom. At that point, Officer Applegarth broke through the locked front door and then forced his way through the bathroom door, which defendant had succeeded in getting “95 percent” closed. Before being subdued, defendant attempted to flip the tannish powder, which later proved to be heroin, into the toilet; although some of the powder attained its target, a great deal was scattered about the floor. Applegarth was followed into the motel room by several fellow officers, also in plain clothes.
Officer Applegarth subsequently recovered from the bathroom some of the heroin which had fallen to the floor, a portion of the mirror (which had broken in the scuffle), a narcotics “user” kit, a bag containing additional heroin, some balloons, a funnel, and a razor blade. All of the seized items were in plain view.
At the time of Officer Applegarth’s entry, defendant’s girl friend, Helen Carmona, was lying down on the bed in the front room of the motel unit.

Defense

Helen Carmona testified that on January 27, 1977, she and her two children were living with defendant in his motel room. At approximately 8:30 or 9 p.m., as she was preparing for bed, Ms. Carmona heard a loud noise as the front door was knocked down and then observed several men enter the room; she did not hear a knock on the door. Ms. Carmona did not know that the men who entered were police officers and did not remember if they had identified themselves as such. After the officers entered, they walked around the kitchen area for a few seconds and then pushed open the bathroom door, which had been closed. Ms. Carmona *335 also testified that it was not possible to see through the front windows as the drapes were completely drawn.
Defendant, testifying in his own behalf, denied hearing any knock on the door and disclaimed any knowledge that the police were outside. He asserted that he had been in the bathroom with the door closed for about five to ten minutes when he heard the “bang” of the front door being knocked down; the police entered the bathroom approximately five to seven seconds later. According to defendant, the drapes in the front room were drawn and could not be seen through. Defendant admitted that he could recognize Applegarth on sight based upon his previous contacts with the officer.
Discussion
I
Compliance with the terms of section 844,[3] which defines the circumstances under which the police may force entry into a dwelling to make an arrest, requires that the police first (1) knock or utilize some other means reasonably calculated to alert the occupants to their presence; (2) identify themselves as police officers; and (3) explain the purpose of their demand for admittance. (Duke v. Superior Court (1969) 1 Cal.3d 314, 319 [82 Cal.Rptr. 348, 461 P.2d 628]; People v. Keogh (1975) 46 Cal.App.3d 919, 927 [120 Cal.Rptr. 817].) The purposes to be served by these requirements have been described as: “(1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder.” (Duke v. Superior Court, supra, 1 Cal.3d at p. 321; see People v. Solario (1977) 19 Cal.3d 760, 763 [139 Cal.Rptr. 725, 566 P.2d 627].) An entry accomplished in violation of section 844, when applicable, will render any subsequent search “unreasonable” within the meaning of the Fourth Amendment. (Greven v. Superior Court (1969) 71 *336 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432]; see Parsley v. Superior Court (1973) 9 Cal.3d 934, 938 [109 Cal.Rptr. 563, 513 P.2d 611].)
There is no dispute in the case at bench that the condition of defendant’s probation which required him to consent to searches of his person or property did not deprive him of the protection afforded by section 844 or relieve the arresting officers from the obligation to act in conformance with that section. (People v. Freund (1975) 48 Cal.App.3d 49, 56-58 [119 Cal.Rptr. 762]; People v. Constancio (1974) 42 Cal.App.3d 533, 542-544 [116 Cal.Rptr. 910].) Further, it is undisputed that Officer Applegarth’s entry into defendant’s motel room did not comport with the literal requirements of the statute since he neither identified himself nor announced his purpose beforehand. (Duke v. Superior Court, supra, 1 Cal.3d 314, 319.)
It is well established, however, that compliance with the provisions of section 844 is excused if the specific facts known to the officer prior to his entry support his good faith belief that such compliance will permit the destruction of evidence inside the dwelling. (People v. Tribble (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; People v. De Santiago (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353]; People v. Baldwin (1976) 62 Cal.App.3d 727, 740 [133 Cal.Rptr. 427].) “When the record contains substantial evidence to support an implied finding that the entry did not violate the knock and notice requirement due to the officer’s good faith belief that the occupants were in the process of attempting to dispose of evidence, this court must uphold that finding.” (People v. Vargas (1973) 36 Cal.App.3d 499, 503 [111 Cal.Rptr. 745].)
Such substantial evidence was present here. When Officer Applegarth, an experienced narcotics officer, approached defendant’s motel room, he had reason to believe that a heroin purchase had just occurred there. The officer’s suspicions were corroborated by his observance of defendant in the act of cutting heroin in the bathroom. After knocking upon the doorpost, further compliance by Applegarth with the dictates of section 844 was thereafter excused when he saw defendant approach the door, look at him in apparent recognition, and then run back toward the easily flushable heroin which had been left in the bathroom.[4] (Accord, People v. Hill (1971) 19 Cal.App.3d 306, 318 [96 *337 Cal.Rptr. 813]; Pierson v. Superior Court (1970) 8 Cal.App.3d 510, 525 [87 Cal.Rptr. 433]; see People v. Colvin (1971) 19 Cal.App.3d 14, 22 [96 Cal.Rptr. 397].) Defendant’s reliance on People v. Hirsch (1977) 71 Cal.App.3d 987 [140 Cal.Rptr. 13] is misplaced since the court in that case, in upholding a finding of improper entry by the police, specifically noted that after the officers had seen a person look out the window and disappear, “[n]o sounds of retreating footsteps or other evidences of flight were heard.” (Id., at p. 991; italics [5]
Pointing to the presence of special circumstances in this case—namely, the fact of a night-time entrance by plain-clothes officers into a room occupied by more than one person-defendant contends that at least minimal compliance with section 844 was required. Defendant cites People v. Boone (1969) 2 Cal.App.3d 503 [82 Cal.Rptr. 566] as a case involving similar special circumstances. Although the exact facts presented in Boone are difficult to discern from the court’s opinion, it appears that the police, in plain clothes and using an unmarked vehicle, forced entry into the defendant’s residence at night upon the pretext that the defendant had discovered their presence and was engaged in the process of destroying evidence. The only direct testimony on the subject of whether the occupants of the residence knew the identity of their visitors was that of the defendant’s wife, who testified that she thought the men running toward her house “were intruders or burglars.” (Id., at pp. 506-507.) Under these circumstances, the court held that compliance with the dictates of section 844 was not excused since there was insufficient evidence to support the necessary inference that the defendant knew that the men entering his home were the police. (Id., at pp. 508-509.)[6]
*338 Distinguishing the case at bench from Boone, however, is the fact that the instant defendant was well acquainted with his arresting officer, defendant admitting that he could recognize Officer Applegarth on sight. Whether defendant actually did approach • the door and recognize Applegarth through the window prior to the latter’s entry was a question of fáct to be resolved at the suppression hearing. (People v. Superior Court (Peck) (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829]; People v. Lawler (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Further, it has been noted that “[w]hile a uniform identifying the entering person as an officer may be relevant in cases where the entry is subject to the requirements of section 844 and the question is whether there was ‘substantial compliance,’ the existence of a uniform is not relevant to the question of whether the entry is subject to the requirements of section 844.” (People v. Peterson (1970) 9 Cal.App.3d 627, 632 [88 Cal.Rptr. 597]; italics added.)
Defendant’s assertion that compliance with the announcement of authority provision of the statute would not have frustrated the recoveiy of the contraband is belied by the evidence; even with no delay in Applegarth’s entry, defendant still managed to toss some of the heroin into the toilet bowl. Moreover, the courts have recognized that once the occupants of the dwelling have discovered the presence of the police, there is probably less risk of danger if the officers act quickly than if they pause to announce their intent to arrest those within. (People v. Baldwin, supra, 62 Cal.App.3d 727, 740; Hernandez v. Superior Court (1971) 16 Cal.App.3d 169, 172 [93 Cal.Rptr. 816]; People v. Peterson, supra, 9 Cal.App.3d 627, 633.)
 Defendant’s contention that minimal compliance with section 844 was required because of Helen Carmona’s presence in the motel room is likewise without merit; that section does not require that the police give notice to all persons on the premises to be searched. (People v. Baldwin, supra, 62 Cal.App.3d 727, 742; see People v. Murphy (1974) 42 Cal.App.3d 81, 88 [116 Cal.Rptr. 889]; Beckers v. Superior Court (1970) 9 Cal.App.3d 953, 960 [88 Cal.Rptr. 602].) The cases cited by defendant are inapposite as they pertain, to restrictions on the right of the police to enter closed, inner rooms without prior notice (Young v. Superior Court (1976) 57 Cal.App.3d 883 [129 Cal.Rptr. 422]; see Greven v. Superior Court, supra, 71 Cal.2d 287, 295) or to enter a dwelling to *339 arrest its occupants after arresting one of their number outside (People v. Buckner (1973) 35 Cal.App.3d 307, 315 [111 Cal.Rptr. 32]). There were no similar facts in the case at bench. Furthermore, defendant’s argument on this point must be rejected for the additional reason that it makes the propriety of an unannounced entry on exigent circumstances grounds dependent upon whether the dwelling happens to be occupied by someone other than the suspect at the time, a fact which in many cases cannot be determined until after the entry.
Based upon the foregoing discussion, we conclude that Officer Applegarth’s entry into defendant’s motel room was not subject to the requirements of section 844.[7]
II
As alluded to previously, any conflicts in the testimony at the suppression hearing were to be resolved by the superior court judge sitting as the trier of fact and sole judge of the credibility of the witnesses. (People v. Superior Court (Peck), supra, 10 Cal.3d 645, 649; People v. Gale (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204].) Nevertheless, defendant contends that the court’s implied findings should be rejected because Officer Applegarth’s version of the facts was inherently improbable.
In People v. Thornton (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], our Supreme Court quoted with approval the following language from People v. Huston (1943) 21 Cal.2d 690, 693 [134 P.2d 758]: “ ‘Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a *340 physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]’ ” (See also People v. Mayberry (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].)
Applying the stated test to Officer Applegarth’s testimony, we cannot conclude that it was inherently improbable. First, contrary to defendant’s assertions, the fact that the front room of the motel unit was dimly lit should have made it easier, not more difficult, for Applegarth to see into the lighted bathroom and for defendant to observe the officer standing outside. Second, Applegarth’s ability to determine from a distance of approximately 12 feet that defendant was cutting heroin must be judged with reference to the officer’s 6 years’ experience in the investigation of narcotics matters.
The gravamen of defendant’s argument on this point, however, is that, given defendant’s head start, it was physically impossible for Officer Applegarth to have broken down the front door, crossed the room, and forced his way into the bathroom before defendant had the opportunity to flush the heroin away. But there is nothing in the evidence to suggest that the breaking down of the front door took more than a few seconds, and the size of the front room (approximately 10 feet in length) certainly posed no great obstacle for the officer. Furthermore, defendant’s concern with closing the bathroom door and keeping Applegarth out was no doubt largely responsible for his inability to dispose of the contraband.
The judgment is affirmed.
Allport, J., and Potter, J., concurred.

Hereinafter, all section references are to the Penal Code.

This was a proper condition of probation. (People v. Mason (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on other grounds in People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; Russi v. Superior Court (1973) 33 Cal.App.3d 160, 166 [108 Cal.Rptr. 716].)

Section 844 provides as follows:
“To make an arrest ... a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.”

Officer Applegarth’s explanation for the manner in which he entered defendant’s motel room was as follows:
“I thought it was obvious that he was in the act of cutting heroin. The heroin had been placed—it was in a powder form, no container, could easily be disposed of especially *337 when I thought it was right on the toilet.
t.
“It was obvious that Mr. Negrete had no intention of coming to the door and opening it and allowing me to address him. He was in fact fleeing directly towards the contraband.
“Any delay would allow that easily disposed of contraband to disappear.”

The suggestion in defendant’s brief that no exigent circumstance could excuse the police from complying with the “upon request” prerequisite of the condition in his probation permitting spot searches is deserving of little consideration. To accept defendant’s argument on this point would place those on similar conditional probations in a better position than the average citizen. People v. Superior Court (Stevens) (1974) 12 Cal.3d 858 [117 Cal.Rptr. 433, 528 P.2d 41], cited by defendant, is clearly distinguishable from the case at bench since there the police made absolutely no attempt to give prior notification to the probationer of their intent to search. (Id., at p. 861.)

Defendant points to the fact that the court in Boone refused to dispense with the requirement that the police identify themselves prior to entry, holding that such identification would not have been a “useless act” under the facts of that case. (People v. Boone, supra, 2 Cal.App.3d 503,507-508.) The language referred to. however, is contained in the portion of the court’s opinion dealing with whether there was substantial compliance with the requirements of section 844, and not in the court’s discussion of *338 whether compliance was excused because of exigent circumstances. (Id., at pp. 506-508.) Admittedly, as the court in Boone recognized, the two issues are not entirely unrelated. (Id., at p. 508.)

The People maintain that Applegarth’s entry was proper on the alternative ground that he had substantially complied with the demands of section 844. The difficulty with this argument is that the Supreme Court has made it clear that “substantial compliance” cannot be achieved “in the absence of an announcement by the officers identifying themselves as such.” (Greven v. Superior Court, supra, 71 Cal.2d 287, 292.) As we affirm on the ground that compliance with section 844 was excused because of exigent circumstances, we need not consider the People’s argument that defendant’s acquaintance with Applegarth made it unnecessary for the officer to verbally identify himself in order to substantially comply with the statute. (But see In re William C. (1977) 70 Cal.App.3d 570, 580 [138 Cal.Rptr. 843], and People v. Bigham (1975) 49 Cal.App.3d 73, 80 [122 Cal.Rptr. 252], both holding that the wearing of a police uniform can substitute for verbal identification on the issue of substantial compliance.)