[No. G022678. Fourth Dist., Div. Three. Sept. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD LYNN HOXTER, Defendant and Appellant.

COUNSEL

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch, Bradley A. Weinreb and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEDSWORTH, J.—Following his unsuccessful motion to suppress evidence, Donald Lynn Hoxter pled guilty to possession of methamphetamine for sale and admitted a prior conviction of a serious felony within the meaning of the three strikes law. He contends the trial court erred in denying his motion because the police improperly relied on the consent of his 16-year-old daughter when they entered his home. He claims their subsequent search of his bedroom, though performed with his permission, was tainted fruit of the unlawful entry. We find to the contrary: After knocking, officers entered the residence legally, in response to his daughter's invitation. Their actions were not only reasonable but legal, given the circumstances. We therefore uphold the ruling on the motion to suppress and affirm the judgment.

After Hoxter failed to appear in court to answer charges in an unrelated case, a warrant issued for his arrest. Around eight o'clock on the evening of September 24, 1996, two Laguna Beach police officers in plain clothes stopped by his home to execute it. As they approached the front door, they met a man about 30 years old and asked if his name was "Don." The man replied "No" but added "Don is inside."[1]

One of the officers knocked at the entrance, and Hoxter's 16-year-old daughter, Amy, told her younger sister to open the door. As the younger girl complied, Amy beckoned the men to "Come on in." When one yelled back, "What?" Amy repeated her invitation. Thinking Amy looked 14 to 16, they entered the residence and walked into the living room where Amy was. They made no mention of their purpose; they simply told her they were looking for "Don." Amy pointed to an adjoining bedroom, the door to the bedroom opened, and Hoxter stepped out to see who the visitors were.

After confirming he was Hoxter, they identified themselves as police officers, displayed their badges, and announced they had a warrant for his arrest. As they took him into custody, they observed a portable propane tank and torch, a pipe, and a plastic baggie containing white powder—all in plain view. They explained to Hoxter the difference between an arrest warrant and a search warrant and requested his consent to search the entire bedroom. When he agreed, they searched and found methamphetamine, a gram scale, and additional drug paraphernalia.

After hearing this evidence, the trial judge denied Hoxter's motion to suppress, explaining, "The motion to suppress is denied based on the fact that it's the [c]ourt's understanding that Penal Code section 844[2] does not apply when the officers have a valid warrant in their possession. And . . . based on the evidence received in this hearing . . . the officer's rendition . . . is accepted."

## DISCUSSION

Hoxter claims the consent he provided officers to search his bedroom and the evidence they discovered as a result were both tainted by the

---

[1]The parties dispute what happened next, but we are obliged to recite the evidence in the light most favorable to the trial court's ruling. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221]; *People* v. *Aguilar* (1996) 48 Cal.App.4th 632, 637 [55 Cal.Rptr.2d 716].)

[2]Penal Code section 844 provides, "To make an arrest, a private person, if the offense is a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired." All further statutory references are to the Penal Code.

officers' improper reliance on his 16-year-old daughter's consent to enter the residence. Specifically, he insists Amy was not old enough to provide permission to enter as a matter of law, and the officers had no reason to believe she had authority to admit them. We do not see it that way. While it appears the trial court's understanding of section 844 was at least partially inaccurate, its explicit adoption of the officers' version of the facts leads us to conclude, as a matter of law, that the officers' entry into the house was reasonable within the meaning of the Fourth Amendment.

We first consider the issue the court based its ruling upon: the applicability of section 844. ▪ Contrary to the trial court's understanding, the mere fact a police officer has an arrest warrant in hand does not automatically entitle that officer to enter a suspect's home without providing the knock-notice required by the section. Where its terms are implicated, section 844 applies whether an officer has a warrant or not. (*People* v. *Wader* (1993) 5 Cal.4th 610, 632 [20 Cal.Rptr.2d 788, 854 P.2d 80]; *People* v. *Jacobs* (1987) 43 Cal.3d 472, 478 [233 Cal.Rptr. 323, 729 P.2d 757]; *People* v. *Schmel* (1975) 54 Cal.App.3d 46, 50 [126 Cal.Rptr. 317].)

According to the statute, if entry into a residence requires a breaking, the officer must knock and announce his or her purpose first. (*People* v. *Bittaker* (1989) 48 Cal.3d 1046, 1072 [259 Cal.Rptr. 630, 774 P.2d 659].) Without such a breaking, the knock-notice rule does not apply. (*People* v. *Peterson* (1970) 9 Cal.App.3d 627, 631 [88 Cal.Rptr. 597]; see also *People* v. *Satz* (1998) 61 Cal.App.4th 322, 327 [71 Cal.Rptr.2d 433] [consent obviates the need for compliance with the rule].) However, in the context of section 844, "breaking" is a term of art, and neither physical violence nor actual damage is necessarily required. (*People* v. *Superior Court* (1970) 5 Cal.App.3d 109, 113 [84 Cal.Rptr. 778].) "Even a peaceable entry may be deemed a 'breaking' if the entry undermines the statutory purposes of safeguarding the privacy of citizens in their homes and preventing unnecessary violent confrontations between startled householders and arresting officers. [Citations.]" (*People* v. *Jacobs*, *supra*, 43 Cal.3d at p. 480; see also *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628].)

The term covers, "[a]t the very least, . . . unannounced entries that would be considered breaking as that term is used in defining common law burglary. [Citations.] As so defined, no more is needed 'than the opening of a door or window, even if not locked . . . or . . . latched.' " (*People* v. *Rosales* (1968) 68 Cal.2d 299, 303 [66 Cal.Rptr. 1, 437 P.2d 489]; accord, *Sabbath* v. *United States* (1968) 391 U.S. 585, 590 [88 S.Ct. 1755, 1758-1759, 20 L.Ed.2d 828].) It also "encompasses the opening of an unlocked screen door [citations], and entry through an open door 'at nighttime when

the occupant apparently is asleep.' [Citation.]" (*People* v. *Superior Court*, *supra*, 5 Cal.App.3d at p. 113.) And unless an occupant of the residence opens the door, knock-notice must be given even if the door has been left ajar. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 87-88 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Miller* (1999) 69 Cal.App.4th 190, 201 [81 Cal.Rptr.2d 410]; *People* v. *Zabelle* (1996) 50 Cal.App.4th 1282, 1286 [58 Cal.Rptr.2d 105].)

Where a breaking occurs and, as a consequence, knock-notice require-ments apply, an officer's failure to comply with the statute in whole or in part can be excused under certain circumstances (e.g., where knock-notice would place lives at serious risk, where police have articulable reasons for believing evidence is about to be destroyed, or where officers have otherwise substantially complied with its provisions). (*Richards* v. *Wisconsin* (1997) 520 U.S. 385, 394-395 [117 S.Ct. 1416, 1421-1422, 137 L.Ed.2d 615] [requiring police have a reasonable suspicion that knock-notice would in-hibit an effective investigation, be dangerous or futile]; *Wilson* v. *Arkansas* (1995) 514 U.S. 927, 936 [115 S.Ct. 1914, 1919, 131 L.Ed.2d 976]; *People* v. *Bradley*, *supra*, 1 Cal.3d at p. 88; *People* v. *Boone* (1969) 2 Cal.App.3d 503, 505-506 [82 Cal.Rptr. 566].) But it is now settled that whether knock-notice is provided is part of the reasonableness inquiry required by the Fourth Amendment. (*Richards* v. *Wisconsin*, *supra*, 520 U.S. at p. 387 [117 S.Ct. at p. 1418]; *Wilson* v. *Arkansas*, *supra*, 514 U.S. at pp. 934-936 [115 S.Ct. at pp. 1918-1919]; accord, *People* v. *Mays* (1998) 67 Cal.App.4th 969, 973 [79 Cal.Rptr.2d 519]; *People* v. *Zabelle*, *supra*, 50 Cal.App.4th at p. 1286.)

■ In entering Hoxter's home, of course, the officers were not required so much as to touch the door after knocking on it. It was opened for them, and they were invited in. Ordinarily, that would have been enough to demonstrate no "breaking," as contemplated by the statute, occurred. But it is not quite that simple here. The door was opened at the direction of a minor. And unless she had actual or apparent authority to authorize the officers' entry, her consent was not valid, and the officers' entry was accomplished by a breaking within the meaning of section 844. (*People* v. *Jacobs*, *supra*, 43 Cal.3d at pp. 480-481.)

In *Jacobs*, a slim majority of our Supreme Court held that an 11-year-old babysitter was insufficiently mature to grant consent for uniformed officers to enter the home despite the fact she had been left in charge and lived at the residence. However, even the *Jacobs* majority recognized that "[a]s a child advances in age she acquires greater discretion to admit visitors on her own authority." (*People* v. *Jacobs*, *supra*, 43 Cal.3d at p. 483.)

As we see it, sufficient discretion certainly exists by the time a child reaches the age of Hoxter's daughter.[3] There is a significant difference between a child of 11 and a young woman who, at 16, is less than 2 short years away from voting, marrying without parental consent (see Fam. Code, §§ 301, 302) and under California case law, already able to obtain an abortion. (*Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 356-359 [66 Cal.Rptr.2d 210, 940 P.2d 797].)

We are convinced that one of the characteristics of the end of the 20th century is that many California 16-year-olds are mature enough to be left in charge of their homes.[4] Certainly police officers confronted by a young woman of that age who appears to have such authority may reasonably forego knock-notice in reliance upon the likelihood her parents have made that decision. But we hasten to express our recognition that not *all* 16-year-olds will either have or appear to have such authority, and that the reasonableness of reliance upon their consent is initially a matter of fact for the trial court to resolve. (*People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 772 [17 Cal.Rptr.2d 743].)

Here, the trial court made no explicit ruling concerning Amy's consent. It did, however, expressly find that the "officer's rendition" of the facts was

---

[3]The courts of several sister states seem to agree. (See, e.g., *Murphy* v. *State* (Ala. Crim.App. 1978) 355 So.2d 1153, 1156 [finding 12-year-old not too young to provide valid consent]; *Doyle* v. *State* (Alaska 1981) 633 P.2d 306, 307-308 [consent of defendant's son, who appeared between 11 and 14 years of age, valid]; *Harmon* v. *State* (1982) 277 Ark. 265, 268 [641 S.W.2d 21, 23], overruled on an unrelated ground in *White* v. *State* (1986) 290 Ark. 130, 135-136 [717 S.W.2d 784, 786-787] [appellant's 16-year-old daughter's consent valid]; *Hampton* v. *State* (Fla.Dist.Ct.App. 1995) 662 So.2d 992, 993 [upholding consent of appellant's son]; *Rajappa* v. *State* (1991) 200 Ga.App.3d 372, 374 [408 S.E.2d 163, 165] [appellant's 15-year-old daughter "was at an age at which she could be expected to exercise minimal discretion"]; *People* v. *Holmes* (1989) 180 Ill.App.3d 870 [129 Ill.Dec. 955, 536 N.E.2d 1005, 1007] ["It is clear from the record that the defendant's 11-year-old daughter gave the police her consent to search . . . . Further, the record shows that [she] was often left alone to babysit her younger brother, a fact which supports a finding that [she] had sufficient capacity to consent"]; *State* v. *Folkens* (Iowa 1979) 281 N.W.2d 1, 4 [14-year-old son provided valid consent]; *State* v. *Hargrave* (La.Ct.App. 1994) 631 So.2d 1208, 1211-1212 [consent of 17-year-old boy valid]; *In re Anthony F.* (1982) 293 Md. 146, 149-150 [442 A.2d 975, 977-978] [juvenile's 16-year-old sister provided valid consent]; *State* v. *Scott* (1986) 82 Or.App. 645, 648-650 [729 P.2d 585, 587-588] [finding consent of appellant's 16-year-old daughter valid]; *Com.* v. *Maxwell* (1984) 505 Pa. 152, 162-163 [477 A.2d 1309, 1315] [consent of 16-year-old daughter valid]; *State* v. *Lotton* (Minn.Ct.App. 1995) 527 N.W.2d 840, 844 [51 A.L.R.5th 849] [10-year-old gave valid consent for police to search her police officer father's apartment for narcotics]; *Frierson* v. *State* (Tex.Ct.App. 1992) 839 S.W.2d 841, 851 [upholding consent given by appellant's son in father's presence]; cf. *U. S.* v. *Clutter* (6th Cir. 1990) 914 F.2d 775, 778 [upholding consent of 12- and 14-year-old boys left in control of the premises by their mother].)

[4]It is impossible to contemplate this fact without wondering just how close to the Apocalypse we have come. But to fail to recognize it is to blink at reality.

"accepted." According to that rendition, Amy appeared to be in her mid-teens (i.e., 14 to 16 years of age), and she engaged in conduct consistent with what would be expected from a person who has authority to exercise some degree of control over the premises (i.e., supervising the conduct of her younger sister and twice inviting the officers to "Come on in"). Moreover, when confronted with the fact his daughter had admitted two police officers into his home, Hoxter made no inquiry into how they came to be there and no effort to revoke the consent. Instead, he consented fully and gave permission for a search of his bedroom. A finding that Amy provided valid consent to enter the residence is thus not only implicit in the court's ruling but also well supported by the facts.[5]

■ Under *Illinois* v. *Rodriguez* (1990) 497 U.S. 177, 188-189 [110 S.Ct. 2793, 111 L.Ed.2d 148], an officer's decision to rely upon any third party consent is " 'judged against an objective standard: would the facts available to the officer *at the moment* . . . "warrant a [person] of reasonable caution in the belief" that the consenting party had authority over the premises? [Citation.] If not, then the warrantless entry without further inquiry is unlawful unless actual authority existed. But if so, the search is valid.' " (Italics added.)

■ It seems to us that when a 16-year-old directs her younger sister to open the door to strangers, such conduct demonstrates that at least she believes she has authority to grant consent for entry. That being so, it is hard to fault an officer who is of the same opinion "at the moment" he or she has to make the call. (See *People* v. *Ingram* (1981) 122 Cal.App.3d 673, 679 [176 Cal.Rptr. 199] [an officer's objectively reasonable, good faith belief in the apparent authority of the person giving consent is sufficient, even if factually mistaken]; accord, *United States* v. *Hamilton* (9th Cir. 1986) 792 F.2d 837, 842; *United States* v. *Lopez-Diaz* (9th Cir. 1980) 630 F.2d 661, 666-667.)[6]

Therefore, on the facts of this case, we find the officers' belief that Amy had apparent authority to provide them consent to enter her home was made

---

[5]We are of course obliged to "uphold those express *or implied* findings of fact by the trial court which are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961].)" (*In re Joseph G.* (1995) 32 Cal.App.4th 1735, 1738-1739 [38 Cal.Rptr.2d 902], italics added.)

[6]Being left in charge of a home typically carries with it the right to oversee what goes on there and to determine who is permitted to go inside and out. If parents decide to leave a child in charge, the risk that accompanies that choice belongs to them, not the police. Thus, parents risk that police officers who come to their residence to enforce the law will reason in good faith that the person who has been left in charge of the premises has the concomitant right to grant consent for entry. If that risk seems onerous, the parents need not assume it or can instruct whomever is left in charge of the premises not to admit the police or others they deem undesirable. (*U. S.* v. *Clutter, supra,* 914 F.2d 775, 778; cf. *United States* v. *Matlock* (1974)

in good faith and was eminently reasonable under the circumstances. And since the entry was made with valid consent, we conclude the officers did not commit a breaking within the meaning of section 844 and were under no obligation to announce their purpose before entering. (Cf. *People* v. *Lara* (1974) 12 Cal.3d 903, 909 [117 Cal.Rptr. 549, 528 P.2d 365] [where defendant's sister " 'let the officer into the living room,' " officers not required to comply with section 844]; *People* v. *Superior Court, supra,* 5 Cal.App.3d 109, 112, 114 [officers lawfully entered after door was opened for them and they were told to "Come on in"]; *People* v. *Ramirez* (1970) 4 Cal.App.3d 154, 156-157 [84 Cal.Rptr. 104] [same].)

In conclusion, it must be noted that, ultimately, Amy's consent was not necessary for entry into the house. Her invitation to enter excused knock-notice but was not essential to justify the officers' decision to cross the threshold. Having been informed Hoxter was present inside the house, the officers were entitled to enter because they had a facially valid arrest warrant in their possession.

■ As the United States Supreme Court explained in *Payton* v. *New York* (1980) 445 U.S. 573, 603 [100 S.Ct. 1371, 1388, 63 L.Ed.2d 639], "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives *when there is reason to believe the suspect is within*"—as there was here.[7] (Italics added.) Neither an exigency *nor consent* to enter is necessary. (See *Steagald* v. *United States* (1981) 451 U.S. 204, 214-215, fn. 7 [101 S.Ct. 1642, 1648-1649, 68 L.Ed.2d 38]; *People* v. *LeBlanc* (1997) 60 Cal.App.4th 157, 164 [70 Cal.Rptr.2d 195]; cf. *People* v. *Jacobs, supra,* 43 Cal.3d at p. 484 (dis. opn. of Mosk, J.) [finding it unnecessary to reach the consent issue after concluding the officers substantially complied with the requirements of section 844 and lawfully entered the house].)

■ Since the officers here had a valid warrant for Hoxter's arrest, not to mention Amy's efficacious consent, their entry into his home to execute the warrant did not offend the Fourth Amendment. And since their entry required no forcible breaking of the threshold, an announcement pursuant to section 844 prior to entry was not required. Consequently, we conclude

---

415 U.S. 164, 171, fn. 7 [94 S.Ct. 988, 993, 39 L.Ed.2d 242] [co-inhabitant assumes the risk that others living on the premises "might permit the common area[s] to be searched"]; *United States* v. *Sledge* (9th Cir. 1981) 650 F.2d 1075, 1080, fn. 10 [same].)

[7] In *Jacobs,* the officers had no reasonable basis for believing Jacobs was at home. (*People* v. *Jacobs, supra,* 43 Cal.3d at p. 477.) In contrast, here, the officers had been informed by an adult outside the front door that "Don is inside." Clearly, had Hoxter come to the door, he could not have prevented the officers from entering his home by refusing to grant them permission to do so. They did not need his consent; they had a warrant.

Hoxter's consent to search his bedroom was not tainted by any prior illegality, and all the evidence seized from that room was properly admitted against him. (Cf. *New York* v. *Harris* (1990) 495 U.S. 14, 21 [110 S.Ct. 1640, 1644, 109 L.Ed.2d 13].)

The judgment is affirmed.

Crosby, Acting P. J., and Scoville, J.,* concurred.

A petition for a rehearing was denied November 1, 1999, and on October 12, 1999, the opinion was modified to read as printed above.

---

*Retired Presiding Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.